## H. FENDRICH, Inc. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10437.

United States Court of Appeals
Seventh Circuit.

Nov. 16, 1951.

Hugh C. Bickford, David H. Nelson, Washington, D. C., for petitioner.

Theron L. Caudle, Asst. Atty. Gen., Morton K. Rothschild, Ellis N. Slack, Helen Goodner, Maryhelen Wigle, Sp. Assts. to Atty. Gen., for respondent.

Before MAJOR, Chief Judge, and KERNER and DUFFY, Circuit Judges.

DUFFY, Circuit Judge.

This is a petition for a review of a decision of the Tax Court. The question to be decided is: In a petition for a review

from a notice of disallowance of claims for relief under Sec. 722, Internal Revenue Code, 26 U.S.C. § 722, did the Tax Court correctly dismiss for want of jurisdiction the taxpayer's petition in so far as it related to issues other than Sec. 722 relief?

Specifically the issue is whether the Tax Court has jurisdiction to determine the correct tax liability for excess profits tax under Sec. 732, Internal Revenue Code, 26 U.S.C. § 732, which section gives the taxpayer the right to petition the court "for a redetermination of the tax" within 90 days after the Commissioner has mailed a notice of disallowance of a claim for refund based upon the relief provisions of Sec. 722. The Tax Court held, with three judges dissenting, that upon such a notice of disallowance its jurisdiction is limited to questions of relief under Sec. 722, and that the petitioner may not raise any other question affecting the correct tax liability. The petitioner contends that the statute requires the Tax Court to consider any question properly raised by the pleadings necessary for "a redetermination of the tax."

Under the Excess Profits Tax Acts of World War II, 26 U.S.C. § 710 et seq., the tax authorized was based upon a concept of "normal income" and "excess profits." The excess profits were to be that part of a taxpayer's income which exceeded an "excess profits tax credit." The act provided two methods for determining the excess profits tax credit, one known as the earnings method and the other the invested capital method. The former took the average earnings during the base period from 1936 to 1939 and treated such average earnings as "normal." The invested capital method took a percentage of invested capital and treated this as the credit for determining normal income. The taxpayer was permitted to use the method giving the most favorable credit. Furthermore, Congress recognized that using the period 1936 to 1939 as a gauge to measure normal earnings might not work out fairly to all taxpayers, and therefore provided that if there were "abnormalities" existing in the base period, a taxpayer must pay his tax according to the general method of calculation and then file a claim for refund under Sec. 722, which defined the types of abnormalities to be considered as grounds for relief.

The petitioner herein claims it had depressed earnings during the base period. It filed its return showing the actual earnings as the basis for computing the excess profits tax credit by the earnings method. However, the credit resulting was lower than 8% of its invested capital, and the taxpayer used the invested capital method in computing its excess profits taxes. It then filed claims for relief under Sec. 722, claiming that its earnings were depressed and that its constructive earnings should be determined at $260,000. If its claim was correct the constructive earnings under Sec. 722 would be more than the invested capital credit.

After filing its returns taxpayer claimed that it discovered that it had incorrectly computed its invested capital by failing to include the amount of $1,250,000 in its equity invested capital, representing the value of trade-marks and good will paid into the corporation in 1920 by its stockholders at the time its business was changed from a partnership to a corporation. It duly filed claims for refund covering this point, claiming it was entitled to include said sum as paid in for stock, as paid-in surplus, or as a contribution to capital under Sec. 718(a) (2), Internal Revenue Code, 26 U.S.C. § 718(a) (2). If taxpayer was correct in this claim, its invested capital credit would be increased by 8% of $1,250,000, and the excess profits tax would be accordingly reduced.

The Commissioner issued a notice of disallowance which concluded with this statement: "Within ninety days * * * from the date of the mailing of this letter, you may file a petition with The Tax Court of the United States * * * for a redetermination of your excess profits tax liability under the Internal Revenue Code." The Commissioner's notice also stated that the claims filed under Sec. 722 would be disallowed but did not refer to petitioner's claims for refund concerning the inclusion of good will in invested capital. If petitioner proved either claim by evidence, the excess profits credit would be in excess of

taxpayer's income for 1943, 1944, and 1945, and all of its income would be considered normal and none excess profits.

Within 90 days petitioner filed a petition with the Tax Court in which it petitioned "for a redetermination of its excess profits tax liability under subchapter E of Chapter 2 of the Internal Revenue Code, as determined by the Commissioner of Internal Revenue in his notice of disallowance." The petition then expressly alleged as errors, among other things, (1) the disallowance of the claim for inclusion of good will in computing its invested capital, and (2) the failure to allow relief under Sec. 722.

The Commissioner filed a motion to dismiss that portion of the petition relating to the good will issue, contending that such a "standard" issue, affecting the excess profits tax liability, could not be raised in a petition filed in opposition to the Commissioner's notice. The Commissioner contended that upon the issuance of a notice of disallowance under Sec. 732, the Tax Court's jurisdiction was limited only to the question whether relief was to be granted under Sec. 722. The Tax Court granted this motion, upon the authority of its opinion rendered on the same day in the case of Mutual Lumber Co. v. Commissioner, 16 T.C. 370. The petitioner asks for a review of the order of dismissal.

■ Agreeing with the dissenting opinion of the Tax Court, we hold that the court did have jurisdiction, upon the petition filed herein, to consider the correct tax liability of taxpayer for excess profits tax. It is reasonable to assume that Congress recognized the advisability of putting the responsibility for determination of the correct tax liability before the same court that was authorized to determine the correct tax under the relief provisions of Sec. 722.

■ Title 26 U.S.C. § 732(a) provided: "If a claim for refund of tax under this subchapter for any taxable year is disallowed * * * by the Commissioner, and the disallowance relates to the application of section * * * 722, relating to abnormalities, the Commissioner shall send notice of such disallowance to the taxpayer by registered mail. Within ninety days * * * the taxpayer may file a petition with the Board of Tax Appeals [1] for a redetermination of the tax under this subchapter. If such petition is so filed, such notice of disallowance shall be deemed to be a notice of deficiency for all purposes relating to the assessment and collection of taxes or the refund or credit of overpayments."

It will be noted that the statute hereinbefore quoted states that a taxpayer may petition "for a redetermination of the tax under this subchapter." Sec. 732(a) was a part of subchapter E of Chapter 2 of the Internal Revenue Code relating to the years 1942–1945. Subchapter E contained all the provisions relating to excess profits tax from Sec. 710 to Sec. 784 inclusive. It follows that when Congress referred to the "tax under this subchapter," it referred to the entire excess profits tax. Respondent's contention ignores the last three words of the sentence, viz., "under this subchapter."

When this section was before the Congress, the House Ways and Means Committee stated (House Rep. No. 146, 77th Cong., 1st Sess., p. 560): "Under existing law, unless a deficiency has been determined by the Commissioner, a taxpayer has no right of appeal to the Board * * *. Thus, for example, if a refund claim were filed by a taxpayer, and the Commissioner disallowed the claim in whole or in part, but did not determine deficiency, no right of review of the Commissioner's action by the Board would be present. Inasmuch as the taxpayer's right to relief under certain of the relief provisions provided in this bill may only be raised by a claim for refund, it is necessary that a procedure be provided whereby the Board may obtain jurisdiction to review a decision by the Commissioner disallowing such claims. Accordingly section 732 (added to the Excess Profits Tax Act of 1940 by sec. 9 of the bill) provides that the taxpayer may file a petition with the Board of Tax Appeals within 90 days after notice of such disallowance is mailed

---

1. By Sec. 504(a) of the Revenue Act of 1942, 26 U.S.C. § 1100, the Board of Tax Appeals became known as "The Tax Court of the United States."

for redetermination of the excess profits tax. If such appeal is taken, then all pertinent issues bearing upon the tax liability under Chapter 2E may be raised by the taxpayer and reviewed by the Board." [1]

Particular note should be taken of the last sentence of this quotation: "If such appeal (from a notice of disallowance of any of the claims specified in Sec. 732(a)) is taken, then *all pertinent issues* bearing upon the tax liability under Chapter 2E may be raised by the taxpayer and reviewed by the Board." [1] Respondent here claims that the only pertinent issues are those pertinent to the relief claims. But the committee did not say that. Effect must be given to the entire sentence which stated, "all pertinent issues bearing upon the tax liability under Chapter 2E may be raised by the taxpayer."

It is difficult to understand how a tax can be correctly "redetermined" unless all factors entering into its determination are considered. A redetermination of a tax liability necessarily requires inquiry into any question properly raised which might affect that tax. Congress did not limit the Tax Court's jurisdiction to all pertinent issues raised under Sec. 722, nor did it limit it to any question passed upon by the Commissioner in ruling upon the relief claims. Congress expressly stated that all pertinent issues bearing upon the tax liability under Chapter 2E, that is, the excess profits tax laws, may be raised by the taxpayer and reviewed by the Board.[1] We agree with Judge Opper, in writing the dissenting opinion below, that the majority opinion of the Tax Court "disregards both express statutory direction and obvious legislative intent."

█ Sec. 732(b), Internal Revenue Code, provides: "If the Board finds that there is no overpayment of tax in respect of any taxable year in respect of which the Commissioner has disallowed, in whole or in part, a claim for refund described in subsection (a) and the Board further finds that there is a deficiency for such year, the Board shall have jurisdiction to determine the amount of such deficiency * * *."

It is thus clear, in the event of a deficiency in tax, that the Tax Court should have jurisdiction to determine the amount of such deficiency. It would be quite impossible for the court to determine the deficiency in respect of a taxable year for which the claim for relief has been disallowed, unless the court considered some question other than the relief question. The taxpayer must file his return and pay his tax before he files his claim for refund under Sec. 722. His claim for a refund, therefore, involves nothing but a refund, or overpayment. When the Commissioner disallows such a claim, the petitioner's case before the Tax Court could not include anything but a claim for a refund if the taxpayer is restricted to the issues under Sec. 722. But Congress did not stop at that point. In Sec. 732(b) Congress said the Tax Court should have jurisdiction not only to disallow the claim for a refund but also to find a deficiency. The only possible manner in which there could be a deficiency would be for the court to find that there was an underpayment of taxes due to some other issue, as, for example, that the income had been understated or that the invested capital had been overstated. We approve of the language in Judge Opper's dissent: "In order then to give section 732(b) any meaning whatever as of the date of its enactment it must be taken as conferring on the Tax Court jurisdiction to consider standard issues under the excess profits tax subchapter generally once a petition has been filed with respect to a claim under section 722. There is no other situation to which it could apply. And if the Tax Court has jurisdiction to consider standard deficiency issues, it has under section 322 [26 U.S.C. § 322] a corresponding jurisdiction to consider claims for overpayment likewise based upon the standard issues."

█ The majority opinion of the Tax Court states that the general tax liability must be determined first. We agree, but we think the Tax Court decision herein makes such determination impossible because it refuses to consider the question which must be answered before the tax liability can be determined. If the decision of the Tax Court is correct, the determination

920

there is on the Sec. 722 issue alone, and petitioner must also bring suit in the district court to try out the good will issue. It would be likely that the Tax Court decision under Sec. 722 would be handed down some time before a decision could be obtained from the district court on the good will issue. Thus the two issues would not be brought together for a coordinated determination. This is contrary to the intent of Congress, as was stated in the report of the Senate Finance Committee (Senate Rep. No. 1631, 77th Cong., 2d Sess., p. 207) : " * * * it is essential that all such issues be decided by one group familiar with the problems involved. Only by this method can a consistent and uniform application of the principles established be assured in all cases. At the same time there is provided flexible machinery to coordinate cases involving both relief and abnormality issues as well as other questions."

The judgment of the Tax Court dismissing that portion of taxpayer's petition relating to the good will issue is

Reversed.