*Decision will be entered under Rule 50.*

H. FENDRICH, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 27290.   Filed November 18, 1955.

---

[3] Regulations 111.

*Hugh C. Bickford, Esq.*, and *Henry H. Elliott, Esq.*, for the petitioner.

*Elmer E. Lyon, Esq.*, for the respondent.

OPINION.

TIETJENS, *Judge:* This proceeding now comes before us pursuant to mandate of the Court of Appeals for the Seventh Circuit.

In December 1949 the respondent disallowed petitioner's applications under the provisions of section 722 of the Internal Revenue Code of 1939 for relief from excessive and discriminatory excess profits taxes for the calendar years 1943, 1944, and 1945. Petitioner filed a timely petition which alleged errors in (1) the disallowance of relief under section 722, (2) failure to allow carryover and carryback of unused excess profits credits for other years, and (3) failure to include in petitioner's invested capital goodwill and other intangibles paid in at the time of incorporation. In February 1951 this Court granted respondent's motion to dismiss that portion of the petition relating to the goodwill issue. The Court of Appeals for the Seventh Circuit reversed in November 1951 and pursuant thereto this Court set aside the previous order of dismissal. The parties have filed a stipulation of facts relating to the goodwill issue and have further stipulated that there are overpayments of excess profits taxes for the taxable years 1943, 1944, and 1945. Respondent concedes that petitioner is entitled to refund of the entire amount of the overpayment for 1943 and some parts of the overpayments for the later years. The petitioner concedes that the correct tax liability as stipulated is not excessive and discriminatory within the meaning of section 722. It follows that the petitioner is not entitled to relief pursuant to that section. The issues remaining for decision are whether refund of the remainder of the overpayments is barred by the statute of limitations and whether petitioner is entitled to a carryover to 1944 of unused excess profits credits for prior years.

The facts are found as stipulated and the stipulation is incorporated by reference.

The petitioner is a corporation organized under the laws of Indiana with principal office at Evansville, Indiana. It is engaged in manufacturing and selling cigars.

At the time of incorporation, April 1, 1920, there was paid into the petitioner, in a closed transaction, goodwill and other intangibles

having a fair market value and basis of $1,000,000. Petitioner is entitled to the addition of such amount of $1,000,000 to its invested capital as originally reported for each of the taxable years 1941, 1942, 1943, 1944, and 1945.

Petitioner filed corporation excess profits tax returns for the calendar years 1943, 1944, and 1945 with the collector of internal revenue at Indianapolis, Indiana, on March 15, 1944, May 15, 1945, and March 15, 1946, respectively. It computed the excess profits credit on the basis of invested capital without inclusion of any amount representing goodwill and other intangibles paid in at incorporation.

Petitioner's excess profits tax return for 1943 showed no tax due. Upon subsequent examination the respondent determined a net deficiency of $70,683.50 which amount the petitioner paid during 1947.

Petitioner's excess profits tax return for 1944 showed a liability of $220,321.30 which amount was paid in 1945. Upon subsequent examination the respondent determined a total liability of $229,081.18 and a deficiency of $8,759.88, which latter amount the petitioner paid in December 1947.

Petitioner's excess profits tax return for 1945· showed a liability of $43,395.52 which amount was paid during 1946. Upon subsequent examination the respondent determined a total liability of $43,835.14 and a deficiency of $439.62, which latter amount the petitioner paid in December 1947.

On December 9, 1946, petitioner and respondent executed an agreement pursuant to section 276 (b) of the Internal Revenue Code of 1939 extending the statutory period of limitations for the taxable year 1943 to June 30, 1948. No other such extension agreements were made by the parties for the taxable years 1943, 1944, and 1945.

Petitioner filed applications for relief pursuant to section 722 of the Internal Revenue Code of 1939 for the taxable years 1943, 1944, and 1945 on April 20, 1948, May 15, 1945, and March 15, 1946, respectively.

On February 16, 1948, petitioner filed claims for refund for 1943, 1944, and 1945 which referred to the applications under section 722. The claim for 1943 also stated, "This claim is filed to protect the taxpayer's rights in the circumstances." The claims for 1944 and 1945 stated, "This claim is filed to protect the taxpayers rights to the fullest extent under its claim for relief under Section 722 of the Internal Revenue Code."

On May 12, 1949, petitioner filed claims for refund for each of the years 1943, 1944, and 1945, which claimed that there should be added to the invested capital of the petitioner for each year the fair market value or basis of intangible property paid in to the corporation at the date of its formation on April 1, 1920. The claims alleged that the value of such intangibles was $1,139,046.06 and concluded with the statement: "Accordingly, the taxpayer claims that its invested capi-

tal for the taxable year should be increased by the amount of $1,139,-046.06 and that its excess profits credit be increased accordingly, with resulting benefits and effects to unused excess profits carry-backs/or carry-forwards which will result in refund of all excess profits taxes paid for this year."

On December 27, 1949, the Commissioner issued a notice of disallowance rejecting in full the petitioner's applications under section 722 and determining the petitioner's excess profits tax liability to be as follows:

| Year | Excess profits tax liability |
|------|------------------------------|
| 1943 | $78,537.22 |
| 1944 | 229,081.18 |
| 1945 | 43,835.14 |

Such liability was determined without the benefit of section 722, without the addition of any amount to invested capital for the fair market value of goodwill paid in to the corporation, and without the allowance of postwar refund. In computing carryover of unused excess profits credits to 1943 and 1944, the computation did not include any increase therein for goodwill in prior years.

The income tax liability of petitioner for the years 1943, 1944, and 1945 before the allowance of $1,000,000 goodwill as additional invested capital for 1941, 1942, 1943, 1944, and 1945 was $79,309.20, $66,809.18, and $69,036, respectively.

After the allowance of $1,000,000 of additional invested capital for the taxable years 1941 to 1945, inclusive, petitioner's income tax and excess profits tax liability for 1943, 1944, and 1945 is now as follows:

| Year | Income tax liability | Excess profits tax liability |
|------|----------------------|------------------------------|
| 1943 | $114,214.63 | |
| 1944 | 146,254.10 | $59,267.66 |
| 1945 | 89,543.07 | |

There are overpayments by petitioner in its excess profits tax liability for 1943, 1944, and 1945 as follows:

| Year | Overpayment excess profits tax | Amounts paid within 2 years before May 12, 1949 |
|------|-------------------------------|-------------------------------------------------|
| 1943 | $70,683.50 | $70,683.50 |
| 1944 | 169,813.52 | 8,759.88 |
| 1945 | 43,835.14 | 439.62 |

The claims for refund filed on May 12, 1949, were the first in which the petitioner alleged a right to treat the value of goodwill as a part of its invested capital for the purpose of computing its excess profits credit. These claims were filed more than 3 years after the returns were filed and more than 2 years after the contested taxes were paid. The respondent's position is that under these facts refund of the

amounts paid in 1945 and 1946 is barred by section 322 (b) (1) [1] of the Internal Revenue Code of 1939.

Petitioner's principal contention is that in any proceeding concerning relief pursuant to section 722 from excessive and discriminatory excess profits tax a taxpayer's entire liability for excess profits tax is in issue and either party may bring forward any new ground for adjustment up to the time when the Commissioner acts finally upon the application for relief. According to this view, after the liability is determined without the benefit of section 722 and relief pursuant to that section is finally authorized or disallowed, the net amount due the taxpayer or the Government is refundable or collectible regardless of any intervening statute of limitations.

Petitioner refers to section 732 (a) of the Code which authorizes proceedings "for a redetermination of the tax under this subchapter," referring to subchapter E of chapter 2, the excess profits tax. In connection with the enactment of this provision the congressional report concerning the intent and purpose of section 732 (a) [2] of the Code (H. Rept. No. 146, 77th Cong., 1st Sess., p. 360, 1941–1 C. B. 560, (Excess Profits Tax Amendments of 1941)) states:

Inasmuch as the taxpayer's right to relief under certain of the relief provisions provided in this bill may only be raised by a claim for refund, it is necessary that a procedure be provided whereby the Board may obtain jurisdiction to review a decision by the Commissioner disallowing such claims. Accordingly, section 732 (added to the Excess Profits Tax Act of 1940 by section 9 of the bill) provides that the taxpayer may file a petition with the Board of Tax Appeals within 90 days after notice of such disallowance is mailed for redetermination of the excess-profits tax. If such petition is filed such notice of disallowance is deemed to constitute a notice of deficiency for the purposes of assessment and collection of any deficiencies and the *credit or refund of overpayments* (*including the suspension of the statute of limitations with respect thereto*). If such appeal is taken, then *all pertinent issues bearing upon the tax liability under Chapter 2E* may be raised by the taxpayer and reviewed by the Board. If the Board does not find an over-assessment but finds a deficiency in such cases, *such deficiency*

---

[1] SEC. 322. REFUNDS AND CREDITS.

    (b) LIMITATION ON ALLOWANCE.—

        (1) PERIOD OF LIMITATION.—Unless a claim for credit or refund is filed by the taxpayer within three years from the time the return was filed by the taxpayer or within two years from the time the tax was paid, no credit or refund shall be allowed or made after the expiration of whichever of such periods expires the later. * * *

[2] SEC. 732. REVIEW OF ABNORMALITIES BY BOARD OF TAX APPEALS [NOW THE TAX COURT OF THE UNITED STATES].

    (a) PETITION TO THE BOARD.—If a claim for refund of tax under this subchapter for any taxable year is disallowed in whole or in part by the Commissioner, and the disallowance relates to the application of section 711 (b) (1) (H), (I), (J), or (K), section 721, or section 722, relating to abnormalities, the Commissioner shall send notice of such disallowance to the taxpayer by registered mail. Within ninety days after such notice is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the ninetieth day) the taxpayer may file a petition with the Board of Tax Appeals for a redetermination of the tax under this subchapter. If such petition is so filed, such notice of disallowance shall be deemed to be a notice of deficiency for all purposes relating to the assessment and collection of taxes or the refund or credit of overpayments.

*may be assessed and collected, regardless of any statute of limitations otherwise applicable.* [Emphasis supplied.]

The petitioner contends that under this statute a petition calls for a redetermination of the entire tax liability, and that the proper determination of a relief claim requires a determination of the whole tax because it is impossible to determine whether the tax is excessive and discriminatory within the meaning of section 722 without a consideration of the entire tax liability. The petitioner points out that upon a proper determination of the goodwill issue (and it is stipulated that petitioner is entitled to this addition to invested capital), there is excess profits tax liability of only $59,267.66 for 1944 and none for 1945, which amount the petitioner concedes is not excessive and discriminatory.

The petitioner also points out that the pertinent regulations provide that the application for relief shall be considered a claim for refund or credit with respect to the amount of tax paid prior to its filing (Regs. 112, sec. 33.722–5 (c)), and that such a claim has the effect of suspending the running of the statute of limitations.

After the respondent mailed the notice of disallowance of the petitioner's applications for relief filed pursuant to section 722, the petitioner filed with this Court a timely petition "for a redetermination of its excess profits tax liability." According to the opinion of the Court of Appeals for the Seventh Circuit in this case (192 F. 2d 916) we have jurisdiction upon this petition to consider the correct tax liability of the petitioner for excess profits tax, and as that court stated, "A redetermination of a tax liability necessarily requires inquiry into any question *properly raised* which might affect that tax." (Emphasis supplied.)

We agree with the respondent that refund of the overpayments in dispute is barred by section 322 because the question of the inclusion of goodwill in invested capital was not raised in a timely claim and therefore was not "properly raised" within the meaning of the statement of the Court of Appeals.

A claim for refund of tax must be sufficiently definite to inform the Government of the items as to which the taxpayer claims error and the grounds upon which it is claimed. *Keneipp* v. *United States*, (C. A., D. C., 1950) 184 F. 2d 263. A claim timely filed asking for repayment of a sum upon one specific ground may not be amended after the statute of limitations has run to recover a greater sum upon a new and unrelated ground. *United States* v. *Andrews*, 302 U. S. 517 (1938), and *United States* v. *Garbutt Oil Co.*, 302 U. S. 528 (1938).

The claims filed in 1949 may not properly be treated as amendments of the timely general claims filed in February 1948. The 1948 claims did not inform the respondent of the fact that petitioner had valuable goodwill which might have been included in its invested capital. They

recited that they were filed "to protect the taxpayers rights to the fullest extent under its claim for relief under Section 722." This is too general a statement to put the Commissioner on notice as to the nature of the claim. *United States* v. *Felt & Tarrant Mfg. Co.*, 283 U. S. 269 (1931).

Nor did the timely applications for relief pursuant to section 722 operate to suspend the running of the statutory period of limitations on the refund of these taxes upon this ground. The applications sought relief from excess profits taxes alleged to be excessive and discriminatory by reason of certain abnormalities in the base period years cognizable under section 722 (b). They did not mention or in any way suggest a ground for an increase in invested capital. While such applications are considered as claims for refund or credit with respect to the amount of tax paid prior to their filing (*Uni-Term Stevedoring Co.*, 3 T. C. 917 (1944)), these applications, as other claims, operate to suspend the running of the statute of limitations only with respect to refunds based upon the grounds alleged therein.

The committee report concerning section 729 (a) makes it clear that limitations are not to be suspended or disregarded. H. Rept. No. 2894, 76th Cong., 3d Sess., p. 29, 1940–2 C. B. 496, 517. In the comment upon the provision of the Second Revenue Act of 1940 making applicable in respect of the excess profits tax "all provisions of law (including penalties) applicable in respect of the taxes imposed by Chapter 1 * * * insofar as not inconsistent with this subchapter," the report gave examples, stating,

Examples of such provisions are provisions relating to the assessment and collection of deficiencies, claims for refund, *periods of limitation on* the assessment and collection of deficiencies or *the allowance of refunds* * * * [Emphasis supplied.]

A "redetermination of the tax" does not necessarily raise the bar of the statute of limitations, as contended by the petitioner. In *Lewis* v. *Reynolds*, 284 U. S. 281, it was held that the Commissioner may offset a barred deficiency against a refund claim, *but only up to the amount of the refund.* The Court quoted with approval the following language used by the Court of Appeals for the Tenth Circuit (p. 283):

"the ultimate question presented for decision, upon a claim for refund, is whether the taxpayer has overpaid his tax. *This involves a redetermination of the entire tax liability. While no new assessment can be made, after the bar of the Statute has fallen,* the taxpayer, nevertheless, is not entitled to a refund unless he has overpaid his tax." [Emphasis supplied.]

Although a redetermination of the entire tax liability was prescribed, the bar of the statute of limitations upon assessments was not regarded as lifted thereby. In the present case a redetermination of the tax liability based upon the addition to invested capital shows that the tax

was overpaid, but this fact does not raise the bar of limitations upon the refund of the amounts paid more than 2 years before the filing of the claim based upon that ground.

We do not read the committee report cited by the petitioner as authorizing the conclusion urged. The statement that a contested notice of disallowance is deemed a notice of deficiency for purposes of credit or refund of overpayments, including the suspension of the statute of limitations with respect thereto, means that the running of the periods of limitations on assessment pursuant to section 277 and refund or credit pursuant to section 322 (d) are suspended after the mailing of the notice of disallowance and that an overpayment ultimately found may be refunded if the limitation period with respect thereto has not already expired. The filing of the petition operates to suspend the statute of limitations only for the period *after* the mailing of the notice and could have no effect upon limitations where the refund is already barred before the notice is mailed. We would not deem it sound to erect an exception to so basic a provision as a statute of limitations merely by an inference drawn from a passage in a committee report. As the Supreme Court said in *Rothensies* v. *Electric Storage Battery Co.*, 329 U. S. 296 (1946), at page 303: "If there are to be exceptions to the statute of limitations, it is for Congress rather than for the Courts to create and limit them."

Congress has made one exception to the general limitations provisions in the case of the excess profits tax. Under section 710 (a) (5) a taxpayer which was claiming relief under section 722 might defer payment of a part of its tax as computed on the return until a final determination was made of its liability. Originally there was no provision as to when the deferred amount was to be assessed. As the statutory period of limitations might expire while the claim was under consideration, section 710 (a) (5) was amended to authorize assessment within 1 year after final determination. See S. Rept. No. 1383, 80th Cong., 2d Sess. (1948). Since Congress has made this one exception to limitations in connection with applications for section 722 relief, it is reasonable to conclude that the further exception contended for by the petitioner was not intended. This provision would be unnecessary if the application for relief suspended all limitations.

Petitioner contends in the alternative that it is entitled to a carryover to 1944 of unused excess profits credits. In the applications for relief claim was made for the carryover of unused credits based upon the use of a constructive average base period net income. The present contention is that the recomputation of the credits for 1941 and 1942 by use of the addition of $1,000,000 to the invested capital results in carryover credits which may be applied to 1944.

In *Lockhart Creamery*, 17 T. C. 1123 (1952), we denied an unused excess profits credit carryover where the application for relief made

no claim therefor. See also *Barry-Wehmiller Machinery Co.*, 20 T. C. 705 (1953), where the claim for carryback was not within the time prescribed in section 322. The original claim herein for a carryover based upon a constructive average base period net income does not entitle the petitioner to a carryover based upon a recomputation of its invested capital. For the reasons previously stated the claim upon the new ground is not timely and may not be treated as an amendment of the timely section 722 claim upon an unrelated ground. *Packer Publishing Co.*, 17 T. C. 882 (1951), reversed on other grounds (C. A. 8, 1954) 211 F. 2d 612, cited by the petitioner, is not in point. In that case we allowed a carryover of a credit based upon a constructive average base period net income where it was indicated in the taxpayer's computation of its claim. The question there was whether any claim had been made.

Refund is in order of the overpayments which the respondent concedes are refundable.

Reviewed by the Court.

> *Decision will be entered according to the stipulation of the parties.*

---

OPPER, *J.*, dissenting: Since I am still convinced that Congress intended to and did suspend the statute of limitations as to both parties while a validly submitted claim under section 722 was being considered, I must respectfully dissent. There can be little question that the main congressional purpose of having the entire excess profits tax liability litigated when section 722 becomes operative, see *H. Fendrich, Inc.* v. *Commissioner*, (C. A. 7) 192 F. 2d 916, would be frustrated if either the respondent were unable to collect a deficiency or the taxpayer were barred from exercising the corresponding privilege of receiving an overpayment.

The legislation and its history have by now been too often discussed to require detailed repetition. *Commissioner* v. *Pittsburgh & Weirton Bus Co.*, (C. A. 4) 219 F. 2d 259; *Martin Weiner Corp.* v. *Commissioner*, (C. A. 2) 223 F. 2d 444; *Packer Publishing Co.* v. *Commissioner*, (C. A. 8) 211 F. 2d 612; *H. Fendrich, Inc.* v. *Commissioner, supra;* see also *Willys-Overland Motors, Inc.* v. *Commissioner*, (C. A. 6) 219 F. 2d 251; *Commissioner* v. *Smith Paper, Inc.*, (C. A. 1) 222 F. 2d 126. But I think it must be beyond question that upon the dispatch of a notice of disallowance of the 722 claim (see *California Vegetable Concentrates, Inc.*, 10 T. C. 1158), respondent could, regardless of the lapse of time (see *Commissioner* v. *Pittsburgh & Weirton Bus Co., supra*), claim the existence of a deficiency or, in his answer, ask for an increased deficiency:

If the Board does not find an overassessment but finds a deficiency in such cases, such deficiency may be assessed *and collected, regardless of any statute of limitations otherwise applicable.* * * * [H. Rept. No. 146, 77th Cong., 1st Sess. (1941), p. 15, 1941–1 C. B. 560. Emphasis added.]

Aside from section 732, directed to 722 claims, the intention to give a taxpayer the right to recover overpayments wherever determination of a deficiency is permissible seems to me to be evident from the carefully calculated provisions of section 322 (d). And even if there are any apparent inconsistencies between the technical requirements of section 322 and suspension of the statute of limitations in such a case as this, which is merely a matter of interpretation, it seems to me necessary to read the two provisions together and conclude that section 732 being the more special statute must prevail in order to carry out the congressional purpose. See *California Vegetable Concentrates, Inc., supra,* at 1169.

The mischief of any such technical limitation as is now being imposed is well illustrated by this proceeding as it was in *Martin Weiner Corp.* v. *Commissioner, supra.* If a taxpayer is entitled to compute its tax in a more favorable manner because, for example, of an invested capital situation as here, or of the application of the growth formula of section 713 as in *Martin Weiner Corp.* v. *Commissioner, supra,* it cannot of course claim relief under section 722. *Irwin B. Schwabe Co.,* 12 T. C. 606; *Homer Loughlin China Co.,* 7 T. C. 1325; *Acme Breweries,* 15 T. C. 682. But see *Jefferson Amusement Co.,* 18 T. C. 44. This is because the excess profits tax provisions taken as a whole are not then excessive or discriminatory as to it. *Irwin B. Schwabe Co., supra,* at 617; *Homer Laughlin China Co., supra,* at 1333. But the very provision upon which the respondent relies for defeating the 722 claim is the one under which the taxpayer is admittedly entitled to a decision that he has overpaid his tax. To say in such a case that the admitted overpayment cannot be recovered although the entire controversy was pending at all times seems so completely unreasonable that I feel convinced it cannot represent the congressional intent.

The claim raising the invested capital issue here was filed before notice of disallowance of the 722 claim was sent—in other words, while as I think any limitations were being suspended. The notice of disallowance was followed by a timely petition. At least under such circumstances, "such notice of disallowance shall be deemed to be a notice of deficiency *for all purposes* relating to * * * the refund or credit of overpayments." (Sec. 732 (a), I. R. C. 1939. Emphasis added.) We know that this broad language was expressly intended to include the statute of limitations aspect. H. Rept. No. 146, *supra.* It seems to me to follow that both the specific legislative purpose of permitting all issues to be effectively litigated in connection with a 722

claim, and the more general one of lifting the limitations bar for the taxpayer wherever the respondent has been similarly treated, are being disregarded by the present result which seems to me, therefore, necessarily incorrect.