**MAY BROADCASTING COMPANY,**
Petitioner,

v.

**COMMISSIONER OF INTERNAL REV-ENUE, Respondent.**

No. 16545.

United States Court of Appeals
Eighth Circuit.

Feb. 16, 1962.

Rehearing Denied April 11, 1962.

Jay O. Kramer and Milton M. Bernard, New York City, made argument for petitioner and Anderson, Gilbert, Wolfort, Allen & Bierman, St. Louis, Mo., were with him on the brief.

Harry Marselli, Dept. of Justice, Washington, D. C. made argument for respondent and John B. Jones, Jr., Acting Asst. Atty. Gen. and Lee A. Jackson, Harold C. Wilkenfeld, Dept. of Justice, Washington, D. C., were with him on the brief.

Before SANBORN and VAN OOSTERHOUT, Circuit Judges, and GRAVEN, Senior District Judge.

VAN OOSTERHOUT, Circuit Judge.

This case is before us upon timely petition for review of the decision of the Tax Court reported at 33 T.C. 1007. The Tax Court by a nine to seven vote held taxpayer's claim for refund of excess profits tax for 1942, based upon the standard issue of its equity invested capital, was barred by the statute of limitations found in § 322(b) (1), 26 U.S.C.A. § 322(b) (1).[1]

The facts are not in dispute and are established by admissions in the pleadings or by stipulation. Taxpayer is an Iowa corporation with its principal place of business at Shenandoah, Iowa. Its income and excess profits tax returns for the year 1942 were filed with the proper collector at Des Moines, Iowa, on March 15, 1943. Taxpayer in its 1942 excess profits tax return showed excess profits net income of $23,373.38. The Tax Court upheld the Commissioner's determination that the true excess profits net income for 1942 is $24,303.40. Taxpayer in its 1942 excess profits tax return claimed its equity invested capital to be $176,745.95 upon the basis of which it claimed credit for $14,139.68. Taxpayer also claimed a $7830.30 unused excess profits credit carryover from 1940 to 1942 and a specific exemption of $5,000. Such deductions total $26,969.98, a sum greater than the excess profits net income reported. The return showed no excess profits tax due.

As a result of a report of a revenue agent, proposing a decrease in taxpayer's 1942 equity invested capital in the amount of $78,475.99, the taxpayer executed a waiver on Form 874, and on October 13, 1944, it paid an excess profits tax in the amount of $8,417.59. An additional payment of excess profits tax in the amount of $837.02 subsequently was made, making its total payment of excess profits tax for 1942 in the amount of $9,254.61.

On November 30, 1944, the taxpayer filed with the Commissioner an application for relief, on Form 991, accompanied by supporting statements, pursuant to § 722, 26 U.S.C.A. Excess Profits

1. All statutory citations, unless otherwise indicated, are to the Internal Revenue Code of 1939 as amended.

Taxes, § 722, in which it claimed a refund in the amount of $8,417.59. No additional claim for refund of excess profits tax for 1942 was filed. On February 23, 1954, the Commissioner issued a notice of deficiency and partial disallowance of the taxpayer's application for relief under § 722. The deficiency determined therein was in taxpayer's income tax for 1942 arising solely out of the reduction in its adjusted excess profits net income for that year, as a result of the partial allowance of relief under § 722. In his determination, the Commissioner granted the taxpayer § 722 relief to the extent of a "constructive average base period net income" (hereinafter abbreviated as CABPNI) in the amount of $10,200, which resulted in an excess profits credit of $9,690, which in turn resulted in an excess profits tax overassessment.

It is undisputed that the Commissioner's notice of partial disallowance just described was issued in conformity with § 732. Taxpayer, on May 20, 1954, within the 90 days allowed by § 732, filed with the Tax Court a petition for redetermination of its income and excess profits tax for 1942. In such petition taxpayer asserted that the Commissioner erred:

1. In refusing to find its equity invested capital was $400,000 on April 1, 1940, plus statutory additions since accruing, and

2. In refusing to find a CABPNI under § 722 of at least $32,000.

Taxpayer asserted that it had filed a timely claim for refund and that it is entitled to a refund of $6,392.16 upon the basis of an excess profits tax overassessment of $9,254.61, offset by an income tax deficiency of $2,862.45.

The Tax Court, in its opinion, states:

"The parties have stipulated that if petitioner filed a timely claim for refund of its 1942 excess profits tax on the basis of an increase in its invested capital credit, it would be entitled to such a refund based upon the utilization of equity invested capital in the amount of $412,231.-91."

The Tax Court majority opinion disposes of taxpayer's refund claim by concluding:

"Petitioner's claim for a refund of overpayment for 1942 based upon an increase of its invested capital is barred by the limitations prescribed in § 322(b) with respect to the filing of refund claims."

The issue of whether taxpayer's claim is barred by § 322(d) was raised by the Commissioner in oral argument. There is considerable doubt whether such issue was properly pleaded in the Tax Court. Such issue is briefly mentioned in the majority opinion. Section 322(d) is relied upon in the concurring opinion of Judge Atkins. The dissenting opinion relies on § 322(d) for support.

While the § 322(d) issue is not specifically argued in the printed briefs, this court has been furnished with briefs discussing such issue, which were filed in Overland Corp. v. Commissioner, 34 T.C. 1001 awaiting argument in the Sixth Circuit, wherein the same counsel appear as in the present case. Ordinarily, we would refuse to consider an issue not squarely raised in the Tax Court pleadings and not presented by the printed briefs. The § 322(d) issue is closely related to the § 322(b) issue and since such issue was discussed by the Tax Court and the parties have submitted such issue to us by consent, we shall under the peculiar circumstances of this case give such issue consideration.

Before discussing the primary issue before us, we believe that we should briefly eliminate from our consideration several issues discussed in the Tax Court decision that are not here challenged.

Taxpayer concedes that upon the record before it, the Tax Court was completely justified in determining that the taxpayer offered no evidence to rebut the presumption of correctness of the Commissioner's determination that it was entitled to no relief under any provision of § 722. We have no doubt that taxpayer's 1944 petition for CABPNI relief under § 722 was filed in good faith and presented a substantial question. The

Commissioner had, in assessing the additional tax, decreased taxpayer's original equity invested capital by $78,475. Taxpayer did not learn until much later that it was entitled to the base set forth in the stipulation.[2] Taxpayer supported his CABPNI claim with extensive statements and argument. In the light of the stipulation, it is not surprising that the Taxpayer in the Tax Court proceedings elected to rely upon the equity invested capital claim.

Something should also be said about the jurisdiction issue. Judge Murdock bases his concurrence on his view expressed in Mutual Lumber Co., 16 T.C. 370, that in a petition filed with the Tax Court pursuant to § 732, the Tax Court has jurisdiction to consider only § 722 issues, and has no jurisdiction to grant relief as to standard issues under the general provisions of Subchapter E relating to excess profits tax. The majority opinion shows some tendency to cling to the Mutual Lumber Co. doctrine as to jurisdiction. However, the Tax Court points out that the parties have not raised the jurisdictional issue. Counsel for the Commissioner in oral argument conceded the jurisdiction of the Tax Court to consider standard issues.

We held in Packer Pub. Co. v. Commissioner, 8 Cir., 211 F.2d 612, that the Tax Court in connection with a § 722 proceeding has jurisdiction to consider standard issues. Other courts of appeal considering such issue have uniformly reached the same conclusion.[3]

We have discussed the jurisdictional issue for the purpose of making it entirely clear that the Tax Court decision cannot be supported on the theory that the Tax Court had no jurisdiction to consider standard issues in a § 732 petition.

We now reach for consideration the principal points relied upon by the taxpayer for reversal, which are in substance:

1. that the Tax Court erred in determining that the claim for refund of excess profits tax for 1942, based on an increase in equity invested capital (standard issue) was barred by the statute of limitations of § 322(b); and

2. that the Tax Court erred in rejecting taxpayer's contention that an application for relief under § 722, filed November 30, 1944, is a claim for refund or credit with respect to taxes paid prior to its filing; that the filing of such refund claim and the filing of the petition in the Tax Court are both parts of a single proceeding which began when the application for relief under § 722 was filed; and that under § 732, all pertinent issues bearing upon the tax liability under Subchapter E of Chapter 2, could be raised by the taxpayer.

We shall first consider taxpayer's *second* contention, as it is broader than the first point. If taxpayer is correct in his contention that the filing of a 991 claim under § 722 tolls the statute of limitations in § 322, then obviously the statute of limitations cannot constitute a bar to the claim because it is here conceded that the taxpayer filed his 991 claim under § 722 within the period of time fixed by § 322.

2. For background for stipulation, see May Broadcasting Co. v. United States, 8 Cir., 200 F.2d 852, decided January 8, 1953, establishing equity invested capital for same taxpayer for 1943, 4 and 5.

3. Commissioner of Internal Revenue v. Pittsburgh & Weirton Bus. Co., 4 Cir., 219 F.2d 259; Willys-Overland Motors, Inc. v. Commissioner, 6 Cir., 219 F.2d 251; Commissioner of Internal Revenue v. Smith Paper, Inc., 1 Cir., 222 F.2d 126; Martin Weiner Corp. v. Commissioner, 2 Cir., 223 F.2d 444; Commissioner of Internal Revenue v. F. W. Poe Manufacturing Co., 4 Cir., 224 F.2d 254; Commissioner of Internal Revenue v. Seminole Manufacturing Co., 5 Cir., 233 F.2d 395; Commissioner of Internal Revenue v. Blue Diamond Coal Co., 6 Cir., 230 F.2d 312; Commissioner of Internal Revenue v. S. Frieder & Sons Co., 3 Cir., 228 F.2d 478; George Kemp Real Estate Co. v. Commissioner, 2 Cir., 205 F.2d 236; Miami Valley Coated Paper Co. v. Commissioner, 6 Cir., 211 F.2d 422; H. Fendrich, Inc. v. Commissioner, 7 Cir., 192 F.2d 916.

It is likewise undisputed that the petition for redetermination of the tax was filed within 90 days after the notice of disallowance in part of the § 722 relief claim given to taxpayer by Commissioner. The problem here presented is one of statutory construction. Did Congress, by the language it used in §§ 722 and 732, provide that the filing of an abnormality claim under § 722 tolls the statute of limitations found in § 322 with respect to the taxpayer's right to refunds on standard issues as well as on issues related solely to § 722 abnormality relief, until the Commissioner had acted upon the abnormality claim?

Section 732 provides in pertinent part:

"If a claim for refund of tax under this subchapter for any taxable year is disallowed in whole or in part by the Commissioner, and the disallowance relates to the application of section * * * 722, relating to abnormalities, the Commissioner shall send notice of such disallowance to the taxpayer by registered mail. Within ninety days after such notice is mailed * * * the taxpayer may file a petition with The Tax Court for *a redetermination of the tax under this subchapter. If such petition is so filed, such notice of disallowance shall be deemed to be a notice of deficiency for all purposes relating to the assessment and collection of taxes or the refund or credit of overpayments.*" (Emphasis added.)

Section 722 is a relief provision. It is a provision which is superimposed upon the structure of the excess profits tax. Normally, it has no effect on the amount of tax imposed by the excess profits tax subchapter. It is intended to operate only if the true amount of the excess profits tax imposed has been ascertained. Once the true amount of the excess profits tax imposed for any year has been determined and paid, § 722 may constitute a vehicle for relief from the tax imposed. It becomes such only if the taxpayer "establishes that the tax computed under this subchapter (without the bene-

fit of this section) results in an excessive and discriminatory tax."

Section 322 is headed "Refunds and Credits." Subsection (a) provides general authorization to refund overpayments. Subsection (b) (1) prescribes the period of time during which a claim for refund must be made. Subsection (b) (2) prescribes the limitation on the amount of refund. Subsection (c) is irrelevant here. Subsection (d) provides authorization for the refund of overpayments found by the Tax Court, making no specific provision about the period of time during which any claim for refund must be made, and prescribes the limitation of amount of refund. Hence, it is apparent that 322(b) and 322(d) are parallel provisions, the former dealing with refunds based upon claims for refunds made on Form 843, and the latter dealing with refunds determined by the Tax Court after the issuance of a notice of deficiency.

Two methods have been recognized as a means for securing refunds for overpayment of taxes. The taxpayer can file a claim for refund within the time provided in § 322(b) and sue for the refund in the district court or Court of Claims. In such a situation, it is well established that the claim for refund must assert the grounds therefor and the claim cannot be amended to assert a new ground after the time provided in § 322(b). United States v. Andrews, 302 U.S. 517, 58 S.Ct. 315, 82 L.Ed. 398.

The taxpayer, after paying the additional tax assessed and paid in 1944, could have filed Form 843 refund claim and brought suit for a refund. Taxpayer filed no 843 claim and is not asserting any rights based upon this type of claim.

The revenue statute also provided that when the Commissioner has determined a deficiency which he is ordinarily required to do within 3 years of the filing of the return (§ 275) and has sent the taxpayer a notice of deficiency, the taxpayer has a right to petition the Tax Court for a redetermination of his tax, raising any issues he chooses in

such petition. Section 272(a). Prior assertion by means of a claim for refund is not prerequisite to taxpayer's right to have a tax redetermined. Where notice of deficiency issues and timely petition is filed with the Tax Court, such court has jurisdiction to determine the correct amount of the tax for the year involved and to consider all issues raised in the Tax Court petition. Schmidt v. Commissioner, 9 Cir., 272 F.2d 423, 426; Ohio Steel Foundry Co. v. United States, Ct. Cl., 38 F.2d 144, 147, 69 Ct.Cl. 158; Peerless Woolen Mills v. Rose, 5 Cir., 28 F.2d 661, 663.

The quoted language of § 732 indicates that Congress elected to treat the denial of an abnormality relief claim in the same manner that income tax claims are treated upon the issuance of a notice of deficiency. It would appear that Congress intended to place jurisdiction in the Tax Court to redetermine excess profits deficiencies rather than to follow the claim for refund procedure followed by suit in the district court or the Court of Claims. It is significant that the underlined portion of § 732 states that the notice of disallowance is a notice of deficiency "for all purposes relating to the assessment and collection of taxes or the refund or credit of overpayments." The statute also requires a redetermination of the tax "under this subchapter." The subchapter is Subchapter E, Chapter 2, which relates to all aspects of the excess profits tax, including the standard issues and abnormality issues.

A valid basis exists for a Congressional desire to suspend the operation of the statute of limitations upon the filing of a § 722 application. The excess profits law presents many complex problems. The record here shows that the taxpayer's application for § 722 relief was filed well within the limitation period provided by § 322, but was not acted upon until more than 9 years after its filing, and long after the normal period of limitation would have expired. Other reported cases show that much time has been necessarily required for the Commissioner to properly consider and determine the many problems raised by the excess profits tax abnormality issues.

If the Commissioner's interpretation of the statutes here under consideration is correct, the taxpayer would ordinarily be compelled to follow the conventional Form 843 refund procedure, and sue for a refund long before the Commissioner determined his § 722 rights. It seems fair to assume that taxpayers normally are interested primarily in the net amount of their taxes rather than upon the issue of whether relief is to be granted upon the basis of standard issues or abnormality issues, and that much time and effort would be saved on the part of the Commissioner, the taxpayer, and the courts if the litigation be withheld until all phases of the tax liability have been determined by the Commissioner. This feature is pointed out in Judge Drennen's dissenting opinion. By such procedure, unnecessary litigation could often be avoided.

Under the Commissioner's interpretation, the taxpayer, to protect himself without the benefit of the Commissioner's determination of his ultimate net excess profits tax, would have to pursue his refund claim by a Form 843 claim, followed by suit in the district court or Court of Claims, and then later, in the event abnormality relief was denied, would have to seek review thereof in the Tax Court. There is an exceedingly close relationship between the standard excess profits tax issues and the abnormality issues, since the statute requires that the correct tax first be determined before the abnormality rules are applied. While Congress doubtless could require such procedure if it so chose, we are reluctant to believe that any such result was intended.

It should be noted that the Commissioner would not be without means for terminating any refund rights upon the part of the taxpayer. The issuance and the time thereof of a notice of deficiency (disallowance) rests in the hands of the Commissioner. Taxpayer cannot apply to the Tax Court for relief until the deficiency notice is issued. The deficiency

notice commences the operation of a statute of limitations. Thus, with respect to any claim the Commissioner could accelerate the period of limitations by the early issuance of notice of deficiency.

Chief Judge Duffy, speaking for the Seventh Circuit in H. Fendrich, Inc. v. Commissioner, 242 F.2d 803, 807, aptly states:

"On the question of the Congressional intent, we approve of the statement of Judge Opper in his dissenting opinion in the instant case: 'To say in such a case that the admitted overpayment cannot be recovered although the entire controversy was pending at all times seems so completely unreasonable that I feel convinced it cannot represent the congressional intent.'"

The dissenting opinion of the Tax Court in the present case, joined in by seven judges, after quoting from § 729 (a), making Chapter I relating to income taxes so far as not inconsistent with the excess profits tax subchapter, applicable to such chapter, and setting out §§ 322(d) and 732(a), states:

"It has never been assumed that a claim for refund is necessary for a determination by the Tax Court of an overpayment under such circumstances pursuant to the provisions of Section 322(d); and in no case to which reference is made has it been so held. It seems to me to follow that not only does the Tax Court have jurisdiction of the issue in this proceeding, namely, the 'redetermination of the [excess profits] tax under this subchapter,' but that, in fact, it is obliged to consider the question, and if there has been an overpayment, to make its determination accordingly. As to the existence of an overpayment, there is apparently no dispute between the parties so that the conclusion would seem to be necessary and obvious.

\*      \*      \*      \*      \*      \*

"It is in my view especially unfortunate for the Tax Court to take the present position since in the only two circuits which have considered the question, the opposite conclusion has been reached."

We believe that H. Fendrich, Inc. v. Commissioner, 7 Cir., 242 F.2d 803, and Commissioner of Internal Revenue v. F. W. Poe Mfg. Co., 4 Cir., 245 F.2d 8, both strongly support the taxpayer's position and the view taken by the dissenting Tax Court judges.

In Fendrich, as here, the standard issue of correct determination of invested capital was first specifically raised in a claim for refund filed after the period provided by § 322(b) had expired. The taxpayer had, however, timely filed application for § 722 relief, and had brought the § 732 proceedings in the Tax Court for redetermination of the tax. There, as here, the Tax Court found § 322(b) (1) barred the claim for relief. In rejecting such claim, the court states in part:

"A redetermination of a tax liability necessarily requires inquiry into any question properly raised which might affect that tax. Congress did not limit the Tax Court's jurisdiction to all pertinent issues raised under Sec. 722, nor did it limit it to any question passed upon by the Commissioner in ruling upon the relief claims. Congress expressly stated that all pertinent issues bearing upon the tax liability under Chapter 2E, that is, the excess profits tax laws, may be raised by the taxpayer and reviewed by the Board. \*  \*  \* We think it is clear from the statutory provisions and legislative history that Congress established a procedure for the proper determination of the entire tax, and that such determination of the whole tax involves a single procedure which began with the timely filing of the application under § 722 and included the rejection thereof by the Commissioner and the petition to the Tax Court."

In Commissioner v. Poe, supra, the court had a similar issue before it. While

it is true the court disposed of the case upon another basis, the opinion reflects that the principle of the Fendrich case has been carefully considered. The court, speaking through Chief Judge Parker, states that it agrees with what was said in the Fendrich case and then sets out with approval the quotation from the Fendrich case that we have hereinabove quoted.

We found no court of appeals cases to the contrary. The Government asserts Commissioner v. S. Frieder & Sons Co., 3 Cir., 247 F.2d 834, is inconsistent with Fendrich and Poe. Frieder deals with limitations as to the Government asserting a deficiency. Such issue brings into play statutes not directly involved in the taxpayer's claim for redetermination in the present case. The court cites both Fendrich and Poe and does not take a definite position on the rule there announced. The court, near the close of its opinion, indicates it finds it unnecessary to pass upon taxpayer's protective claim for review of its § 722 abnormality claim. Thus, we consider Frieder no definite authority one way or the other upon the problem we are considering.

May Seed & Nursery Co. v. Commissioner, 8 Cir., 242 F.2d 151, relied upon by the Commissioner, does not involve the issue here presented and is not controlling. There the taxpayer claimed an unused excess profits tax carryover for the year 1942, based upon CABPNI for 1941, but had not asserted such claim in his 1942 relief application. We there held that the taxpayer was claiming a benefit which was dependent upon § 722. Section 722 specifically requires "the benefits of this section shall not be allowed unless the taxpayer within the period of time prescribed by section 322 * * * and subject to the limitation as to amount of credit or refund prescribed in such section makes application therefor in accordance with regulations prescribed by the Commissioner."

Regulation 30.722–5, which we held to be reasonable and which was promulgated pursuant to the statute, specifically required "if any unused excess profits credit, * * * computed on the basis of a constructive average base period net income, is to be used as an excess profits carryover", the taxpayer must file a Form 991 claim for § 722 relief or an amendment thereto, claiming the benefit of the excess profits carryover.

In our present case, unlike May Seed & Nursery Co., the issue relied upon by the taxpayer is a standard issue, not a § 722 issue, and there is no statute or regulation specifically requiring that a standard issue such as here raised be specifically asserted in a § 722 application. See Headline Publications, Inc. v. Commissioner, 2 Cir., 263 F.2d 541. Since the § 722 relief requested could only be determined after the true tax liability under the standard issues was determined, the standard issues were automatically before the Commissioner by virtue of and without specific mention in, the § 722 application.

Thus, under a proper interpretation of § 722 and § 732(a), the application to the Commissioner for relief and the petition to the Tax Court for redetermination of the tax are component parts of the procedure established by Congress for obtaining a redetermination of the tax in a single proceeding and necessarily involve a resolution of all standard issues and all abnormality issues specifically raised. No regulation of the Commissioner is pertinent to this case. Entitlement to refund based on the standard issue of equity invested capital has been established here by stipulation. Hence, § 322(d) authorizes the refund of 1942 excess profits taxes paid by taxpayer within two years prior to November 30, 1944. Moreover, we conclude on the basis of the foregoing reasoning and the authority of the Fendrich and Poe decisions that the Tax Court erred in holding that taxpayer's claim was barred by § 322(b), for the reason that that section is inapplicable generally to Tax Court proceedings and is inapplicable in this case.

The decision of the Tax Court is reversed.