MARTIN WEINER CORP. (FORMERLY WOHL FABRICS CO.), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 32774. Filed April 20, 1956.

*Benjamin Nadel, C. P. A.*, for the petitioner.
*Maurice S. Bush, Esq.*, for the respondent.

OPINION.

BLACK, *Judge:* This case is before us on remand from the Court of Appeals for the Second Circuit, *Martin Weiner Corp.* v. *Commissioner*, 223 F. 2d 444.

In our initial report in these proceedings, 21 T. C. 470, we held (following *Mutual Lumber Co.*, 16 T. C. 370) that where respondent, in a combined notice of deficiency and disallowance for various taxable years, determined that there was an overassessment of $11,088.77 in petitioner's 1942 excess profits tax of which $4,646.45 was due to "standard issue adjustments" (i. e., adjustments under the World War II excess profits tax provisions of the Internal Revenue Code of 1939 other than section 722), we lacked jurisdiction to enter a judgment for refund of that $4,646.45 because no deficiency in petitioner's 1942 excess profits tax had been determined. As a result of that holding it was unnecessary for us to consider respondent's contention that, in any event, refund of the $4,646.45 is barred by the statute of limitations provisions of section 322 of the 1939 Code. The Court of Appeals, however, reversed our holding as to jurisdiction and remanded the case to us for decision of the statute of limitations issue.

All of the facts were stipulated and are found accordingly in our initial report at 21 T. C. 470. For convenience, however, we here set forth those facts which are pertinent to consideration of the issue now before us.

During the period 1941 through 1945, petitioner had three corporate officers: President, secretary and treasurer, and assistant secretary. For its taxable year 1942, petitioner, on May 15, 1943, filed with the appropriate collector of internal revenue, *inter alia*, a document numbered Form 1121 and entitled "Corporation Excess Profits Tax Return." That document bore the sworn signature of only one of petitioner's officers, its president, and reported excess profits tax of $32,223.74 for 1942. Petitioner paid the reported tax in 5 installments as follows: 3 installments, aggregating about $16,000, between June 10 and August 10, 1943; and 2 installments, also aggregating about $16,000, on September 17, 1943, and January 1, 1944.

On September 4, 1943, petitioner filed a Form 991, claiming section 722 relief for the full amount of its 1942 excess profits tax. It later (on March 15, 1947, and August 19, 1947) filed two Forms 843 which related to, and were stated to be claims in "duplication" of the claim previously filed on Form 991. The aforesaid Form 991 and Forms 843 relate exclusively to relief under section 722; they contain no claims for refund due to standard issue adjustments. Each of the two claims for refund filed on Form 843 stated that the amount to be refunded was $32,223.74, and each contained the following language:

The deponent verily believes that this claim should be allowed for the following reasons:

That the credit for excess profits taxes as determined prior to the application of Sec. 722 results in an excessive and discriminatory tax.

Excess Profits Tax Paid_____ $32,223.74
Excess Profits Tax Due_____ none

To the amount covered by form 991, filed for this period, this claim is a duplication.

By so-called 30-day letter to petitioner dated May 9, 1945 (less than 2 years after petitioner made the aforementioned installment payments of its 1942 excess profits tax), the internal revenue agent in charge at Newark, New Jersey, disapproved petitioner's claim for excess profits tax relief under section 722 and held that there was a deficiency in petitioner's 1942 income tax which, after being partially offset by an overassessment of $3,206.45 in its excess profits tax, resulted in petitioner's owing some additional tax for 1942. This holding was based on a revenue agent's report, dated April 23, 1945, and enclosed with the May 9 letter, in which the $3,206.45 overassessment in excess profits tax was arrived at as a result of the following two standard issue adjustments:

(a) Decrease of $3,500 in officers' salaries from those reported on the Form 1121 ("Corporation Excess Profit Tax Return") filed by petitioner for 1942. This had the effect of increasing petitioner's excess profits net income and was, therefore, an adjustment in respondent's favor.

(b) Increase in petitioner's average base period net income (ABPNI) from $28,530.65, reported on the Form 1121, to $35,965.13. This increase resulted from adjustments in the excess profits net income reported by petitioner for the base period years 1938 and 1939, and utilization of the so-called growth formula in section 713 (f) of the 1939 Code. The resulting adjustment was in petitioner's favor. The May 9 letter gave petitioner 30 days in which to either accept the proposed adjustments or file a protest; failing both, a statutory deficiency notice would be issued. Petitioner did not accept the adjustments.

On January 8, 1946 (more than 2 but less than 3 years after petitioner filed its Form 1121 for 1942 and paid the excess profits tax reported thereon), petitioner and respondent executed an agreement pursuant to section 276 (b) of the 1939 Code extending the time for assessment of petitioner's 1942 "income, excess profits, or war profits taxes" to June 30, 1947. By subsequent agreements that time for assessment was extended to June 30, 1951.

By letter dated September 26, 1950, the internal revenue agent in charge at Newark, New Jersey, sent petitioner a statement and computation of its income and excess profits tax liability for the years 1941 through 1944, in the exact figures as those contained in a subse-

quent statutory notice of deficiency and disallowance, discussed in the next paragraph. The September 26 letter notified petitioner that action on its tax liability was being suspended for 15 days during which time petitioner had the opportunity to agree to the deficiencies and overassessments therein determined. Petitioner did not so agree.

On December 15, 1950, respondent sent petitioner a statutory notice of deficiency and disallowance for 1941 through 1944, which notice of deficiency is fully described in *Martin Weiner Corp., supra*. The pertinent parts of that notice relating to petitioner's excess profits tax for 1942 follow:

ADJUSTMENTS TO NET INCOME

| | |
|---|---:|
| Net income as disclosed by return | $67,908.30 |
| Unallowable deductions and additional income: | |
| (a) Officers' salaries | 3,500.00 |
| Corrected net income for excess profits tax computation | $71,408.30 |

\* \* \* \* \* \* \*

COMPUTATION OF EXCESS PROFITS CREDIT—BASED ON INCOME

| | | |
|---|---:|---:|
| 1. Constructive average base period net income | | $43,500.00 |
| 2. 95% of line 1 | | $41,325.00 |
| 3. Net capital addition | $20,000.00 | |
| 4. 8% of line 3 | | 1,600.00 |
| 5. Excess profits credit—based on income—(line 2 plus line 4) | | $42,925.00 |

\* \* \* \* \* \* \*

COMPUTATION OF TAX

*Excess Profits Tax*

| | | |
|---|---:|---:|
| 1. Excess profits net income | | $71,408.30 |
| Less: 2. Specific exemption | $5,000.00 | |
| 3. Excess profits credit | 42,925.00 | 47,925.00 |
| 5. Adjusted excess profits net income | | $23,483.30 |

\* \* \* \* \* \* \*

| | |
|---|---:|
| 16. Correct excess profits tax liability [90% of item 5] | $21,134.97 |
| 17. Excess profits tax assessed: Original account #1139900 | 32,223.74 |
| 22. Overassessment of excess profits tax | $11,088.77 |

We noted in *Martin Weiner Corp., supra*, that the $11,088.77 overassessment in petitioner's 1942 excess profits tax was the product of the following factors:

(a) The two standard issue adjustments first noted in the revenue agent's report accompanying the aforementioned letter of May 9, 1945. Those adjustments decreased petitioner's deduction for officers' salaries by $3,500 and increased its ABPNI to $35,965.13, thereby resulting in the determination of an overassessment of $3,206.45.

(b) A standard issue adjustment increasing petitioner's excess profits credit by $1,600 to reflect 8 per cent of its net capital additions of $20,000, pursuant to the provisions of sections 713 (a) (1) (B) and 713 (g) of the 1939 Code. This adjustment resulted in an additional overassessment of $1,440 (90 per cent of $1,600) which, when combined with the overassessment resulting from the two aforementioned standard issue adjustments, equals an overassessment of $4,646.45 attributable to standard issue adjustments.

(c) Relief granted under section 722, whereby a constructive average base period net income (CABPNI) of $43,500 was substituted for the ABPNI of $35,965.13 to which petitioner would otherwise be entitled (see (a) above). This accounts for the $6,442.32 balance of the $11,088.77 total determined overassessment.

The aforementioned adjustments were specifically noted in the statutory notice except for the increase in the ABPNI to $35,965.13.

On February 23, 1951, petitioner filed its original petition in this case seeking relief only in respect of its excess profits tax under section 722 of the 1939 Code. At the hearing petitioner abandoned its claim for any further relief under section 722 than respondent had already granted. Respondent raised no objection to petitioner's right to receive the $4,646.45 here in dispute until he filed an amended answer to that petition. This amended answer was filed November 17, 1952, and, among other things, affirmatively pleaded the statute of limitations as a bar to the refund of the $4,646.45 which respondent alleged to be due to standard issue adjustments. Paragraph 13 of respondent's amended answer reads:

13. That under the provisions of section 322 (d) of the Internal Revenue Code the Tax Court may not determine as an overpayment due to the petitioner for the taxable year 1942 the said amount of $4,646.45.

Petitioner contends that now that the case has been remanded to us for determination as to whether the statute of limitations bars the refund to the petitioner of the $4,646.45 in question, we should enter judgment for refund of the entire amount of the admitted overpayment of $11,088.77, which, of course, includes the $4,646.45 in question. Petitioner advances three separate and distinct grounds, each of which alone petitioner alleges will fully support such a refund. The petitioner states these grounds in its brief, as follows:

1. The petitioner made the overpayment within two years of the filing of a claim sufficient to support a refund thereof and a determination to that effect by this Court under Section 322 (d) (1) (A).

2. The petitioner's 1942 Excess Profits Tax Return filed on Form 1121, was a valid return, and this Court should therefore determine under Section 322 (d) (1) (B) that the overpayment was made and the return was filed within three years before the execution by the parties of an agreement under Section 276 (b) extending the period of limitations for additional assessments.

3. The entire overpayment of $11,088.77 arose out of relief under Section 722 as determined by the Commissioner in his statutory notice, thus rendering moot the questions presented under paragraphs 1 and 2 above.

We shall first take up and decide petitioner's point 1. If petitioner wins on this point the other two need not be decided. With reference to this point, respondent contends that petitioner is not entitled to refund of the $4,646.45 portion of the $11,088.77 overassessment in its 1942 excess profits tax because that portion is due to standard issue adjustments as to which petitioner has failed to comply with the statute of limitations provisions in section 322 of the 1939 Code.[1] In essence respondent's position as to petitioner's point 1 is that although petitioner filed a claim on Form 991 on September 4, 1943, and paid over $16,000 in excess profits tax within 2 years prior thereto, that claim relates only to section 722 relief and does not, therefore, satisfy the requirements of section 322 (d) (1) (A) as regards the $4,646.45 overpayment attributable to standard issue adjustments.

Petitioner, on its part, contends that, even if the $4,646.45 is attributable to standard issue adjustments, the Form 991 claim which it filed for section 722 relief on September 4, 1943, and which satisfies the provisions of section 322 (d) (1) (A) is sufficient to support a refund of that sum. Petitioner's argument, in essence, is that although the Form 991 did not specify any grounds for relief other than section 722, the requirement that a refund claim must specify the grounds relied upon for relief is contained in respondent's regulations, can be waived by respondent, and was in fact waived here since respondent was aware, considered, and acted on the merits of the standard issue adjustments giving rise to the $4,646.45 refund. We think petitioner is correct in this argument.

---

[1] SEC. 322. REFUND AND CREDITS.

(b) LIMITATION ON ALLOWANCE.—

(1) PERIOD OF LIMITATION.—Unless a claim for credit or refund is filed by the taxpayer within three years from the time the return was filed by the taxpayer or within two years from the time the tax was paid, no credit or refund shall be allowed or made after the expiration of whichever of such periods expires the later. If no return is filed by the taxpayer, then no credit or refund shall be allowed or made after two years from the time the tax was paid, unless before the expiration of such period a claim therefor is filed by the taxpayer.

*    *    *    *    *    *    *

(d) OVERPAYMENT FOUND BY BOARD.—If the Board finds that there is no deficiency and further finds that the taxpayer has made an overpayment of tax in respect of the taxable year in respect of which the Commissioner determined the deficiency, * * * the Board shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Board has become final, be credited or refunded to the taxpayer. No such credit or refund shall be made of any portion of tax unless the Board determines as part of its decision (1) that such portion was paid (A) within two years before the filing of the claim, the mailing of the notice of deficiency, or the execution of an agreement by both the Commissioner and the taxpayer pursuant to section 276 (b) to extend beyond the time prescribed in section 275 the time within which the Commissioner might assess the tax, whichever is earliest, or (B) within three years before the filing of the claim, the mailing of the notice of deficiency, or the execution of the agreement, whichever is earliest, if the claim was filed, the notice of deficiency mailed, or the agreement executed within three years from the time the return was filed by the taxpayer, * * *

As noted by the Supreme Court in *Angelus Milling Co.* v. *Commissioner*, 325 U. S. 293, "Candor does not permit one to say that the power of the Commissioner to waive defects in claims for refund is a subject made crystal-clear by the authorities." We have, however, carefully studied the cases bearing on this issue and think that the following principles are to be drawn therefrom:

Where none of the other conditions in sections 322 (b) (1) and (d) (1) (A) of the 1939 Code are satisfied, those sections require that a claim for refund be filed by a taxpayer within 2 years after payment of the tax sought to be refunded. That requirement is a statute of limitations provision which cannot be waived by respondent and which must be complied with if the taxpayer is to recover its refund. However, although a claim for refund may also be denied if it does not conform with the formal requirements contained in respondent's regulations under section 322 (to the effect that such claims shall be made on certain forms and must state the grounds relied upon for refund),[2] those regulatory requirements *can be waived* by respondent. *Tucker* v. *Alexander*, 275 U. S. 228; *United States* v. *Memphis Cotton Oil Co.*, 288 U. S. 62; *United States* v. *Humble Oil & Refining Co.*, (C. A. 5) 69 F. 2d 214; *United States* v. *Garbutt Oil Co.*, 302 U. S. 528; *United States* v. *Kales*, 314 U. S. 186; *Angelus Milling Co.* v. *Commissioner*, *supra*.

In *United States* v. *Memphis Cotton Oil Co.*, *supra*, the Supreme Court noted that:

The line of division must be kept a sharp one between the function of a statute requiring the presentation of a claim within a given period of time, and the function of a regulation making provision as to form. The function of the statute, like that of limitations generally, is to give protection against stale demands. The function of the regulations is to facilitate research. * * *

And, more specifically as it affects the instant case, it was said in *Angelus Milling Co.* v. *Commissioner*, *supra:*

Treasury Regulations are calculated to avoid dilatory, careless, and wasteful fiscal administration by barring incomplete or confusing claims. * * * But Congress has given the Treasury this rule-making power for self-protection and not for self-imprisonment. If the Commissioner chooses not to stand on his own formal or detailed requirements, it would be making an empty abstraction, and not a practical safeguard, of a regulation to allow the Commissioner to

---

[2] Regulations 111:

SEC. 29.322–3. CLAIMS FOR REFUND BY TAXPAYERS.—Claims by the taxpayer for the refunding of taxes, interest, penalties, and additions to tax erroneously or illegally collected shall be made on Form 843, or on Form 1040 * * * and should be filed with the collector of internal revenue. A separate claim shall be made for each taxable year or period.

No refund or credit will be allowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed prior to the expiration of such period. The claim must set forth in detail each ground upon which a refund is claimed, and facts sufficient to apprise the Commissioner of the exact basis thereof. * * *

invoke technical objections after he has investigated the merits of a claim and taken action upon it. * * *

The showing should be unmistakable that the Commissioner has in fact seen fit to dispense with his formal requirements and to examine the merits of the claim. It is not enough that in some roundabout way the facts supporting the claim may have reached him. The Commissioner's attention should have been focused on the merits of the particular dispute. The evidence should be clear that the Commissioner understood the specific claim that was made even though there was a departure from form in its submission. * * *

* * * * * * *

It is not essential for the establishment of a waiver that the Commissioner communicate his ruling on the merits to the taxpayer. But in the absence of such explicitness the implication that formal requirements were dispensed with should not be tenuously argumentative. * * *

Petitioner herein, shortly after paying more than $16,000 of the $32,223.74 excess profits tax reported by it for 1942, filed a Form 991 claiming refund of the full $32,223.74 on section 722 grounds. That, we think, was a claim for excess profits tax refund within the meaning of the *statutory* language in sections 322 (b) (1) and (d) (1) (A) and, consequently, we hold that the mandatory statute of limitations provisions of that section were complied with. See Regs. 112, sec. 35.722–5 (a), (c),[3] and cases cited above.

However, Regulations 111, section 29.322–3 requires that claims under section 322 be filed, *inter alia*, on Form 843 and must state the specific grounds relied upon for the refund. The Form 991 claim actually filed by petitioner in its application for section 722 relief which, as we have already pointed out, is sufficient to satisfy the statutory provisions of section 322, was not on a Form 843 and did not mention the two favorable standard issue adjustments (i. e., increase of its ABPNI to $35,965.13 under section 713 (f) and increase of $1,600 in its excess profits credit to reflect net capital additions) which gave rise to the $4,646.45 refund here in dispute. But respondent, as we have noted, has power to waive those two formal defects.

---

[3] SEC. 35.722–5. APPLICATION FOR RELIEF UNDER SECTION 722.—(a) *Requirements for filing.*—* * * To obtain the benefits of section 722 for any taxable year, the taxpayer must, within the period of time for filing a claim for credit or refund and subject to the limitation as to amount of credit or refund prescribed by section 322 as applicable to the taxable year for which relief is claimed, file under oath an application on Form 991 (revised January, 1943) for the benefits of section 722, * * *

* * * * * *

(c) *Claim for refund.*—The application on Form 991 or Form 991 (revised January, 1943) shall be considered a claim for refund or credit with respect to the excess profits tax for the taxable year for which the application is filed which has been paid at or prior to the time such application is filed. The amount of credit or refund claimed shall be the excess of the amount of excess profits tax for the taxable year paid over the amount of excess profits tax claimed to be payable computed pursuant to the provisions of section 722. In case the taxpayer elects to pay in installments the tax shown upon its return and at the time the application is filed such tax has not been paid in full, the taxpayer should file a claim for refund on Form 843 as promptly as possible after such tax has been paid in full. The information already submitted in the application need not again be submitted on Form 843 if reference is made therein to such application. For limitations upon refunds and credits generally, see section 322. * * *

If his acts constituted a waiver thereof no bar exists to petitioner's recovery of the $4,646.45; if his acts did not constitute a waiver, petitioner's recovery must be denied, unless petitioner's points 2 or 3 are sustained.

By a "30-day letter," dated May 9, 1945, respondent's agent informed petitioner that an adjustment increasing petitioner's ABPNI to $35,965.13 had been made which, after being offset by another standard issue adjustment, resulted in a $3,206.45 overassessment in petitioner's 1942 excess profits tax. The letter gave petitioner the choice of either accepting that adjustment (along with adjustments in its income tax which resulted in a net deficiency for 1942), filing a protest, or being sent a statutory deficiency notice. Moreover, the letter was sent to petitioner before the expiration of the 2-year period (dating from petitioner's installment payments of its 1942 excess profits tax) within which petitioner could have timely filed a claim specifying that particular adjustment as a ground for refund. We think that, as regards the ABPNI adjustment, this action by respondent clearly constituted a waiver of any formal defects in petitioner's claim under the standards indicated in *Angelus Milling Co.* v. *Commissioner, supra.*

By letter dated September 26, 1950, respondent's agent informed petitioner, *inter alia,* of respondent's allowance of the adjustment increasing petitioner's 1942 excess profits credit by $1,600 to reflect net capital additions.[4] The letter gave petitioner 15 days in which to accept that adjustment (along with other adjustments which resulted in a net deficiency in taxes for 1941 through 1944). These facts are in all substantial particulars the same as those relating to the aforementioned adjustment increasing petitioner's ABPNI, except that here respondent's letter was not sent until *after* the expiration of the 2-year period within which petitioner could have filed a timely claim specifying the $1,600 excess profits credit increase as a ground for refund. We do not, however, think that this calls for a different result since we are not here dealing with a statute of limitations requirement (which we have already found was satisfied and which, in any event, respondent could not waive) but with regulatory requirements of form which respondent imposes for his own benefit and which he can waive. Accordingly, we hold that, as regards the $1,600 excess profits credit adjustment, respondent's actions likewise constituted a waiver of any formal defects in petitioner's claim.

---

[4] This adjustment was also specifically noted in the December 15, 1950, statutory notice of deficiency and disallowance sent by respondent. Furthermore, until respondent filed his amended answer in the original proceedings before this Court (21 T. C. 470), respondent raised no objection to petitioner's right to receive the $4,646.45 refund on the basis of failure to specify as grounds in its claim either this adjustment or the aforementioned ABPNI adjustment.

Respondent cites and relies on *H. Fendrich, Inc.*, 25 T. C. 262, as supporting his denial to petitioner of the refund of $4,646.45. That case, however, did not deal with a question of waiver and we think it is distinguishable on its facts. In the *Fendrich* case, *supra*, a section 722 claim was timely filed, and additional claims for refund covering a standard issue were filed after the expiration of the period of limitations for filing claims for refund. The standard issue raised in the untimely claims was whether the taxpayer was entitled to include goodwill and other tangible assets in invested capital. That question had never been raised by the taxpayer or considered by the Commissioner within the period of limitations or prior to the time when the additional claims for refund were filed. Accordingly, we held in that case that the taxpayer could not base its claim for an allowance of additional invested capital on the timely section 722 claim for refund because the Commissioner was not apprised of the pertinent facts and had never considered or been called upon to consider the invested capital issue within the period of limitations for filing claims for refund. However, there was no evidence in that case, nor did the taxpayer assert, that the Commissioner had waived the requirement of particularity with respect to claims for refund set forth in his regulations.

The case at bar, we think, is different. The so-called standard issue adjustments in the instant case were made by respondent on his own motion as a result of his own investigation and were communicated to petitioner. In view of respondent's action in allowing those adjustments on the merits on his own motion, he is in no position to insist that the refund arising out of the adjustments is barred by limitation because the ground on which he allowed the adjustments was not particularized in the claim for refund that was timely filed. It is well established law, we think, that in these circumstances the Commissioner has waived the particularity requirement set forth in the regulations, and that petitioner's timely claim for refund in its application for relief under section 722 is sufficient to support a refund of the full amount of the overpayment determined in the statutory notice.

In view of the above we conclude that the Form 991, timely filed by petitioner, satisfied the statute of limitations requirements of section 322 (d) (1) (A) as regards the $4,646.45 refund attributable to standard issue adjustments and that there is no other bar to the recovery of that sum.

Having decided point 1 in petitioner's favor it becomes unnecessary to decide points 2 and 3 which petitioner raises in the alternative.

*Decision will be entered under Rule 50.*