DALE DISTRIBUTING COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 58969. Filed January 31, 1958.

800

*Arthur Susswein, Esq.*, for the petitioner.
*Emil Sebetic, Esq.*, for the respondent.

TIETJENS, *Judge*: The Commissioner determined a deficiency in petitioner's income tax in the amount of $32,511.63 and an overassessment in petitioner's excess profits tax in the amount of $32,897.62 for the fiscal year ended March 31, 1943. Certain adjustments made by the Commissioner were not contested by the petitioner. It is stipulated that the sole issue for decision is whether petitioner is entitled to an unused excess profits credit adjustment to the taxable year ended March 31, 1943, which includes to any extent an unused excess profits credit carryback from the taxable year 1944.

### FINDINGS OF FACT.

Most of the facts are stipulated, are so found, and the stipulated facts and the pertinent exhibits are included herein by reference.

The petitioner is the Dale Distributing Company, Inc. (formerly the Dale Radio Co., Inc.), a corporation, which was incorporated on

March 23, 1933, under the laws of the State of New York. The petitioner's principal office is located in Long Island City, New York.

The petitioner filed its tax returns on the basis of a fiscal year ended March 31, for all taxable years prior to March 31, 1945. All references hereafter to the petitioner's taxable years 1941, 1942, 1943, 1944, and 1945, refer to fiscal years ended March 31 of those years. The petitioner had a short taxable period from April 1, 1945, through January 31, 1946. Such taxable period shall hereafter be referred to as the petitioner's taxable year 1946.

The petitioner timely filed its income and declared value excess-profits tax return and its excess profits tax return for the taxable year 1943 with the collector of internal revenue for the third district of New York.

Agreements between the petitioner and the Commissioner were entered into extending the statute of limitations governing the assessment and collection of taxes for the taxable years 1942 through 1945, to June 30, 1949.

The petitioner filed applications for relief under section 722 (Form 991) for the years and on the dates set forth below. In such applications the petitioner claimed the right to relief under section 722 and also claimed the right to the benefits of unused excess profits credits, as follows:

| Taxable year | Date application filed | CABPNI [1] claimed | Unused excess profits credits claimed |
|---|---|---|---|
| 1941 | Sept. 10, 1943 | $80,942.61 | None claimed. |
| 1942 | Sept. 10, 1943 | 80,942.61 | Carryover from 1941. |
| 1943 | Sept. 3, 1943 | 80,942.61 | Carryovers from 1941, 1942. |
| 1944 | Nov. 24, 1944 | 80,942.61 | None claimed. |
| 1945 | June 27, 1945 | 80,942.61 | None claimed. |
| 1946 | Oct. 16, 1947 | 80,942.61 | None claimed. |

[1] Constructive average base period net income.

Petitioner was aware at the time its original applications for relief were filed that a specific claim was necessary to obtain the benefits of any unused excess profits credits resulting from the allowance of relief under section 722.

Petitioner's applications for relief under section 722 for the taxable year 1943, as well as its similar applications for the taxable years 1941, 1942, 1944, 1945, and 1946, were referred to the section 722 Field Committee. A series of conferences with respect to such applications for relief were held thereafter between October 24, 1947, and November 1, 1948. Petitioner was represented at such conferences by Harvey Alcott, its treasurer.

At or about November 18, 1948, the Field Committee's representative advised petitioner, through Alcott, that a CABPNI of $39,061.71 was being tentatively proposed for allowance. He also advised petitioner,

through Alcott, to file amended applications (Form 991) to assert the benefit of unused excess profits credit carrybacks and/or carryovers resulting from such CABPNI. It was Alcott's understanding, from talking to the representative, that the carryovers and carrybacks resulting from the proposed CABPNI would eliminate most of the tax and it was on that basis that he recommended acceptance by petitioner.

On May 20, 1949, petitioner filed amended applications for relief under section 722 (Form 991) for the taxable years 1942, 1943, and 1944, claiming the right to the benefits of unused excess profits credits, computed with a CABPNI of $39,061.71, as follows:

| Taxable year | Unused excess profits credits claimed |
|---|---|
| 1942 | Carryback from 1944 |
| 1943 | Carryback from 1945 |
| 1944 | Carryback from 1946 |

Petitioner filed a related claim for refund (Form 843) for the taxable year 1943, on June 23, 1949. Petitioner also filed a protective claim for refund for the taxable year 1943, on February 21, 1950, to include in its prior application for relief and claim for refund the amount of $18,383.06 "or such larger amount legally refundable," representing an additional assessment of excess profits tax agreed to by petitioner and paid on or about August 29, 1949.

On February 21, 1950, after field investigation, it was recommended that there be a partial allowance of the petitioner's applications for relief and there was proposed a CABPNI of $15,837.54 for the taxable year 1941 and $46,962.17 for the taxable years 1942 through 1946. The petitioner was formally notified of the proposal in a letter dated September 18, 1950. A report was attached to the letter summarizing the recommendation. A footnote on the report, referring to the CABPNI proposed for the taxable years 1944 and 1945 said—

Standard issue adjustments eliminated the entire excess profits tax for these years. The applications for relief became ineffectual and the constructive average base period net income determination was made for carry-back purposes only.

The Field Committee's representative pointed out to Alcott, as before, that the carrybacks and carryovers would have the effect of eliminating most of the tax.

Petitioner signified its agreement to the proposed CABPNI by executing a Form EPC-1 with respect thereto and transmitting it to the Commissioner on June 21, 1950.

On October 9, 1950, the Excess Profits Tax Council approved and determined the CABPNI's as proposed in the above-mentioned report of February 21, 1950, and advised the petitioner by letter dated October 11, 1950, that such determination with respect to its applications for relief had been transmitted to the internal revenue agent in charge in New York City, for appropriate action.

The following schedule shows the respective amounts of excess profits net income, excess profits credit, unused excess profits credit, specific exemption, and adjusted excess profits net income determined by the Commissioner with the benefit of section 722 for each of the taxable years 1941 through 1946:

| Taxable year | Excess profits net income | Excess profits credit | Unused excess profits credit adjustment | Specific exemption | Adjusted excess profits net income |
|---|---|---|---|---|---|
| 1941 | [1] $12,854.71 | [1] $18,348.37 | | | |
| 1942 | 72,144 71 | 45,314.33 | [2] $38,017.71 | $5,000 | |
| 1943 | 112,296.49 | 45,334.06 | [3] 37,713.46 | 5,000 | $24,248.57 |
| 1944 | 12,810 01 | 45,334.06 | | | |
| 1945 | 7,620.60 | 45,334.06 | | | |
| 1946 | 32,231.10 | 45,334.06 | | | |

[1] Computed under 1941 law for carryover purposes only.
[2] Aggregate of unused excess profits credit carryover from 1941 and carryback from 1944, computed as follows:

TAXABLE YEAR 1941.

Excess profits credit ___ $18,348.37
Excess profits net income ___ 12,854.71

1941 unused excess profits credit carryover ___ $5,493.66

TAXABLE YEAR 1944.

Excess profits credit ___ $45,334.06
Excess profits net income ___ 12,810.01

1944 unused excess profits credit carryback ___ 32,524.05

Aggregate unused excess profits credit carryover and carryback to 1942 ___ $38,017.71
[3] Unused excess profits credit carryback from 1945 computed as follows:

TAXABLE YEAR 1945

Excess profits credit ___ $45,334.06
Excess profits net income ___ 7,620.60

1945 unused excess profits credit carryback ___ $37,713.46

On October 24, 1950, petitioner's applications for relief were transmitted to the Audit Division of the third district of New York for the purpose of having the necessary recomputations made of petitioner's income tax and excess profits tax liability for the taxable years 1941 through 1945 based on the cabpni allowed and determined by the Excess Profits Tax Council. On October 26, 1950, a revenue agent was assigned the task of recomputing petitioner's income tax and excess profits tax liability. However, due to the pressure of other work and because an examination and audit of petitioner's tax returns were being made for subsequent taxable years, no such computation was then made and the case was held in suspense. The above-mentioned examination and audit of petitioner's tax returns were completed and a report submitted with respect thereto in the latter part of March 1952. Subsequently, in the latter part of April 1952, another agent was assigned the task of making the necessary recomputation of petitioner's income tax and excess profits tax liability for the taxable years 1941 through 1945.

The agent, in carrying out his assignment, examined the entire file to determine what was involved, checked to note what returns and claims were in the file, examined all such returns and claims to see that they were timely filed, and then after conferring with petitioner's representative, made the recomputations of petitioner's tax liability.

In a report dated May 8, 1952, the agent set forth the results of his recomputation. Petitioner's adjusted excess profits net income for 1943 was computed as follows:

| | | |
|---|---:|---:|
| Excess profits net income per revenue agent's report | | $112,296.49 |
| Less: Specific exemption | $5,000.00 | |
| Excess profits credit | 45,334.06 | |
| Carryover credit from taxable year 1942 | 11,187.33 | |
| Carryback credit from taxable year 1945 | 37,713.46 | 99,234.85 |
| | | |
| Adjusted excess profits net income | | 13,061.64 |

In such report, the carryover credit from the taxable year 1942 was computed as follows:

| | |
|---|---:|
| Specific exemption | $5,000.00 |
| Excess profits credit | 45,314.33 |
| Carryover credit from taxable year 1941 | 5,493.66 |
| Carryback credit from taxable year 1944 | 32,524.05 |
| | |
| Credit allowable for taxable year 1942 | 88,332.04 |
| Less: Specific exemption | 5,000.00 |
| | |
| | 83,332.04 |
| Less: Adjusted excess profits net income for taxable year 1942 | 72,144.71 |
| | |
| Carryover credit from taxable year 1942 | 11,187.33 |

The agent was aware that the carryover credit from the taxable year 1942 of $11,187.33, represented the carryback from 1944 to 1942 which had not been consumed by the 1942 income.

A copy of the above-mentioned report was transmitted to the petitioner in a letter dated May 27, 1952, which explained that after the overassessments had been processed by the collector, petitioner would receive a check in payment of the overassessment and interest, provided there were no outstanding taxes against which the amount should be credited.

On or about August 28, 1952, the Post Audit Review Section of the Audit Division of the Internal Revenue Service, in reviewing the proposed determination of petitioner's tax liability as set forth in the report of May 8, 1952, concluded that the agent, in computing the excess profits tax liability for the taxable year 1943, erroneously allowed an unused excess profits credit carryover of $11,187.33 from the taxable year 1942 (the computation of which is set forth in detail above).

Thereafter, the agent prepared revised reports, dated December 4, 1952, concerning petitioner's tax liability for the taxable years 1941 through 1945, in which his prior computations for all years except the taxable year 1943 were unchanged. His computation for the taxable year 1943 was revised to disallow the unused excess profits credit carryover of $11,187.33 on the basis of the Post Audit Review Section's determination and action. In a letter dated December 23, 1952, a copy of the revised report covering the recomputation for the taxable year 1943 was transmitted to the petitioner. In a letter dated April 20, 1953, a copy of the revised report covering the computations for the taxable years 1941, 1942, 1944, and 1945 was transmitted to the petitioner.

On February 21, 1953, the petitioner filed an additional claim for refund (Form 843) and an additional application for relief under section 722 (Form 991) for the taxable year 1943, described as "amendments" to the claims and applications previously filed for the taxable year 1943, asserting a right, based on the allowed CABPNI of $46,962.17 for the taxable years 1942 through 1946, to the—

"carry-over from the fiscal year ended March 31, 1942" of an unused excess profits credit of $11,187.33 * * * [resulting from] * * * a carry-over of $5,493.66 from the fiscal year ended March 31, 1941 to the fiscal year ended March 31, 1942 and a carry-back of $32,524.05 from the fiscal year ended March 31, 1944 to the fiscal year ended March 31, 1942.

The amendments also stated that it was the petitioner's contention that no amendments were required "to support its claim for refund in full * * *. However, * * * the taxpayer wishes to protect its interest by having filed" the amended claim.

In his statutory notice of deficiency the Commissioner's refusal to allow the unused excess profits credit adjustment in question was explained as follows:

In the determination of your excess profits tax liability, as set forth herein, no allowance is made for any unused excess profits credit carry-back from the taxable year ended March 31, 1944, based on constructive average base period net income for such year. Your claim for refund of $41,959.35 excess profits taxes for the year ended March 31, 1943, asserting this ground was filed after the statutory period of limitation for filing such claim had expired.

OPINION.

The only issue for decision is whether petitioner is entitled to the benefit of an unused excess profits credit adjustment to the taxable year 1943 which includes to any extent an unused excess profits credit carryback from the taxable year 1944.

Section 722 (d) provides that the benefits of section 722 shall not be allowed unless the taxpayer within the period of time prescribed by section 322 make application therefor in accordance with regula-

tions prescribed by the Commissioner. The regulations [1] provide that if an application on Form 991 for the benefits of section 722 has been filed with respect to any taxable year and if the excess profits credit based upon a CABPNI determined for such taxable year produces an unused excess profits credit for such year, to obtain the benefits of such unused excess profits credit as an unused excess profits credit carryback the taxpayer should file an application upon Form 991, or an amendment to such application if already filed, for the taxable year to which such unused excess profits credit carryback is to be applied. The regulations provide further that such application or amendment should be filed within the period of time prescribed by section 322 for the filing of a claim for credit or refund for the taxable year to which the carryback is to be applied and in addition to all other information required, should claim the benefit of the unused excess profits credit carryback.

Section 322 provides that if an agreement extending the period for assessment of a tax is made within the period prescribed for the filing of a claim for refund (3 years from the time the return was filed or 2 years from the time the tax was paid, whichever expires later, but with respect to a claim based on the carryback of an unused excess profits credit, the refund claim is timely if filed before the expiration of the 15th day of the 39th month following the end of the taxable year of the unused excess profits credit) then the period for filing claim for refund shall be the period within which an assessment may be made pursuant to the agreement or any extension thereof and 6 months thereafter.

In our case, the petitioner's timely original application for relief under section 722 for the taxable year 1943, filed September 3, 1943, contained a claim for the benefits of unused excess profits credit carryovers from the taxable years 1941 and 1942 to the taxable year 1943 and the petitioner's timely amended application for relief under section 722 and related claim for refund for the taxable year 1943, filed May 20 and June 23, 1949, respectively, contained claims for the benefit of an unused excess profits credit carryback from the taxable year 1945 to the taxable year 1943. Neither petitioner's original application nor its amended application and claim for refund contained any claim for the benefits of an unused excess profits credit carryback from the taxable year 1944 to the taxable year 1943. Finally, on February 21, 1953 (subsequent to the running of the statute of limitations), the petitioner filed so-called amendments to its applications for relief under section 722 and claim for refund, allegedly claiming the benefit of an unused excess profits credit carryback from the taxable year 1944 to the taxable year 1943.

---

[1] Regs. 112, sec. 35.722–5 (a), as amended.  See T. D. 5393, 1944 C. B. 415, 422.

The Commissioner contends that the petitioner never made a timely specific claim for the benefit of the unused excess profits credit carryback from the taxable year 1944 to the taxable year 1943 and therefore it is barred from using such credit. As authority for his position he cites *Lockhart Creamery*, 17 T. C. 1123 (1952); *Barry-Wehmiller Machinery Co.*, 20 T. C. 705 (1953); *St. Louis Amusement Co.*, 22 T. C. 522 (1954); and *May Seed and Nursery Co.* v. *Commissioner*, 242 F. 2d 151 (C. A. 8, 1957), affirming 24 T. C. 1131 (1955).

The petitioner makes five arguments as to why it should be entitled to the benefits of the unused excess profits credit carryback in question.

Relying on *H. Fendrich, Inc.* v. *Commissioner*, 242 F. 2d 803 (C. A. 7, 1957), reversing 25 T. C. 262 (1955), the petitioner argues that its application for relief under section 722 for the taxable year 1943, filed on September 3, 1943, constituted sufficient basis for the allowance of a refund of 1943 excess profits taxes based on a determination of its adjusted excess profits net income which reflected an unused excess profits credit arising out of the taxable year 1944.

In the *Fendrich* case the taxpayer timely filed an application for relief under section 722 and a claim for refund of excess profits taxes paid. After the statute of limitations had run and before the Commissioner had made a decision on the section 722 issue, the taxpayer amended its refund claim so as to include a new "standard issue" claim. The Court of Appeals held that the taxpayer's timely application for relief under section 722 suspended the statute of limitations as to all pertinent issues for the same year, provided such issues were raised before a final determination was made on the section 722 issue. We think the *Fendrich* case is distinguishable however, and not applicable to our situation. In our case the petitioner attempted to raise the issue as to the carryback of the unused excess profits credit from the taxable year 1944 to the taxable year 1943 subsequent to the determination of the section 722 issue since prior to its filing of the so-called amendment to its applications for relief under section 722 and related refund claim, the Revenue Service had proposed to allow petitioner a CABPNI of $15,837.54 for the taxable year 1941 and $46,962.17 for the taxable years 1942 through 1946, which proposal the petitioner agreed to by executing a Form EPC–1, and which CABPNI's were approved by the Excess Profits Tax Council on behalf of the Commissioner. In view of these circumstances, we do not regard the *Fendrich* case as controlling here.

The petitioner's second argument, as we understand it, is, in short, that the allowance of a carryback arising out of a CABPNI is mandatory by virtue of section 710. In answer to this argument, we think it sufficient to say that that same argument was specifically rejected by us in *Barry-Wehmiller Machinery Co.*, *supra*, where we said (20 T. C. at 714)—

To uphold the petitioner's argument would be to ignore sections of the Code and regulations under which taxpayers are required to file proper and sufficient claims for refund, for each taxable year for which a refund is sought.

See also *May Seed and Nursey Co.* v. *Commissioner, supra.*

Petitioner's third argument is that the Commissioner waived any formal defects in its claims and applications. It argues that the Commissioner's attention was focused on the merits of the particular claim and that he examined them, since the claim was allowed by the revenue agent in his first report; and, furthermore, that the reason petitioner agreed to the final CABPNI of $46,962.17 was that it was Alcott's understanding from talking to the revenue agent that the unused excess profits credit carryovers and carrybacks would eliminate most of the tax. Petitioner, relying primarily upon *Martin Weiner Corp.*, 26 T. C. 128 (1956), contends that the Commissioner waived his regulatory requirements and thus it should be allowed the benefit of the carryback in question.

It is well established that if a taxpayer is to recover a refund of taxes, he must comply with the statute of limitations provisions since the Commissioner cannot waive those requirements. *United States* v. *Garbutt Oil Co.*, 302 U. S. 528 (1938). However, although the Commissioner may deny a claim for refund if it does not conform with the formal requirements contained in his regulations, those regulatory requirements can be waived by the Commissioner. *United States* v. *Memphis Cotton Oil Co.*, 288 U. S. 62 (1933). But the showing should be unmistakable that the Commissioner has in fact seen fit to dispense with his formal requirements and to examine the merits of the claim. *Angelus Milling Co.* v. *Commissioner*, 325 U. S. 293 (1945).

We think the petitioner has failed to show that the Commissioner waived his regulatory requirements. The record establishes that Alcott, petitioner's representative, was aware of the fact that specific claims had to be filed in order to secure the benefits of unused excess profits credit carryovers and carrybacks. Furthermore, it was stipulated that at or about November 18, 1948, a revenue agent advised petitioner that a CABPNI of $39,061.71 was being tentatively proposed for allowance and he also advised petitioner to file amended applications on Form 991 to assert the benefit of unused excess profits credit carryovers and carrybacks resulting from such CABPNI. Accordingly, petitioner filed amended applications on May 20, 1949, claiming the benefits of unused excess profits credit carrybacks, computed under section 722 and using a CABPNI of $39,061.71, from the taxable year 1944 to the taxable year 1942, from the taxable year 1945 to the taxable year 1943, and from the taxable year 1946 to the taxable year 1944. Related claims for refund were also filed on June 23, 1949. The amended applications and claims were thus filed prior to the running

of the statute of limitations, which had been extended by agreement to June 30, 1949. We think the above facts establish that petitioner was put on notice by the Commissioner that he was not waiving any of the formal requirements governing the filing and allowing of claims for unused excess profits credits resulting from carryovers and carrybacks and also that the petitioner was not relying on a waiver of the regulations by the Commissioner.

It is true that when the revenue agent computed petitioner's excess profits tax liability for the taxable year 1943, using the CABPNI agreed upon by the parties, he allowed petitioner the benefits of the unused excess profits credit carryback from 1944 to 1943; however, in his computation, he identified such credit as a *carryover credit from the taxable year 1942*. In its original application for relief under section 722 petitioner had made a claim for the benefit of such a credit based on a CABPNI, and the revenue agent who made the computation testified that in his opinion, in allowing the $11,187.33 credit, he was allowing a carryover from the taxable year 1942 to the taxable year 1943, though he was aware that such carryover resulted from a carryback from the taxable year 1944 to the taxable year 1942 of an unused excess profits credit based on a CABPNI (for which petitioner had applied in a timely amended application). Shortly thereafter the Post Audit Review Section of the Internal Revenue Service, in reviewing the computation, concluded that the agent erroneously allowed the above-mentioned carryover, and thereafter a recomputation of petitioner's excess profits tax for the taxable year 1943 was made by the agent in which the $11,187.33 credit was not allowed. At no time was an unused excess profits credit carryback from the taxable year 1944 to the taxable year 1943, designated as such, allowed the petitioner by the Commissioner. In view of these circumstances, it is our opinion that allowance of the $11,187.33 credit to petitioner by the agent in his first computation, did not constitute a waiver of the regulations by the Commissioner.

Petitioner's reliance on *Martin Weiner Corp.*, *supra*, is misplaced. In that case the taxpayer timely filed an application for relief under section 722 and a related claim for refund of excess profits taxes paid for 1942, on section 722 grounds only. Neither the application nor the claim contained claims for refund due to standard issue adjustments. Subsequently the Commissioner determined an overassessment in the taxpayer's 1942 excess profits taxes in the amount of $11,088.77, of which $6,442.32 was due to relief granted under section 722 and $4,-646.45 was due to two standard issue adjustments which were discovered by the Commissioner while considering the merits of the original claim. The taxpayer then filed a petition in this Court seeking relief only in respect of its excess profits tax under section 722. No objection to the taxpayer's right to receive the $4,646.45 refund was made by the Commissioner until he filed an amended answer to the above-

mentioned petition. Then for the first time he contended that the taxpayer should be denied the refund on the ground that, in accordance with his regulations, the taxpayer had not amended its original claim by setting out specifically the standard issue grounds and that it was then too late to do so by reason of the statute of limitations. We held that the Commissioner had waived his regulatory requirements and that the refund should be allowed. The factual differences between our case and *Martin Weiner Corp.* are readily apparent and clearly distinguish the two.

Petitioner's fourth argument is that its amended application and amended claim filed on February 21, 1953, were valid amendments of the timely claims and applications previously filed and, therefore, cured any alleged defects with respect to assertion of grounds of refund. Petitioner cites *United States* v. *Memphis Cotton Oil Co.*, *supra*, and *Wilmington Gasoline Corporation*, 27 T. C. 500 (1956), in support of that argument.

The *Memphis Cotton Oil* case holds that a taxpayer may introduce new grounds for recovery after the statute of limitations has run by amending a *pending* claim which had been timely filed if the facts upon which the amendment is based would necessarily have been ascertained by the Commissioner in determining the merits of the original claim.

However the rule of the *Memphis Cotton Oil* case can have no application here because at the time the petitioner filed its so-called amendments (February 21, 1953) there was no longer a pending claim which could be amended, since on December 23, 1952, a letter was transmitted to the petitioner containing a recomputation of petitioner's excess profits tax for the taxable year 1943, in which the Commissioner disallowed the use of the unused excess profits credit carryback from the taxable year 1944 to the taxable year 1943. *Edwards* v. *Malley*, 109 F. 2d 640 (C. A. 1, 1940). Likewise, the petitioner's reliance on *Wilmington Gasoline Corporation*, *supra*, is misplaced.

The petitioner's last argument is that the Commissioner is estopped from asserting the alleged failure of petitioner to specify the carryback of an unused excess profits credit from the taxable year 1944 to the taxable year 1943 in a timely claim. The petitioner's reasons as to why the Commissioner is estopped are as follows: (1) When the $39,061.71 CABPNI was proposed, it was Alcott's understanding from talking to the revenue agent that the carryovers and carrybacks resulting from the proposed CABPNI would eliminate most of the tax; (2) that the revenue agent advised petitioner to file amended applications with respect to carrybacks and carryovers resulting from the originally proposed CABPNI of $39,061.71 but that when the $46,962.17 CABPNI was subsequently proposed the revenue agent did not mention anything about filing amended applications; (3) that in the letter

formally notifying petitioner of the proposed CABPNI of $46,962.17, there was an accompanying report which stated that the CABPNI determinations for the taxable years 1944 and 1945 were made for carryback purposes only; and (4) that the Commissioner, by needlessly postponing the computation of petitioner's excess profits tax liability for the taxable year 1943 from October 1950 until April 1952, prevented the petitioner from amending its claims or filing timely new ones since the statute of limitations was open until August 29, 1951, by virtue of the petitioner's payment of a standard issue assessment of $18,383.06 on August 29, 1949. In summary, petitioner argues that it had been led into feeling that its rights were secure and that the only additional action required by either party was the Commissioner's mathematical computation of petitioner's correct tax liability for the taxable year 1943. The petitioner cites *Smale & Robinson, Inc.* v. *United States*, 123 F. Supp. 457 (S. D. Cal., 1954), in support of its argument.

We think the petitioner's estoppel argument is without merit since we fail to see how the Commissioner's conduct can be considered as representing to petitioner that the unused excess profits credit carryback from the taxable year 1944 to the taxable year 1943 would be allowed without the making of a formal claim by petitioner. That the revenue agent advised petitioner to file amended applications with respect to carrybacks and carryovers which would result from a proposed CABPNI indicates to us that the Commissioner was not trying to mislead petitioner or lull petitioner into a feeling that its rights were secure. Nor do we see how the report which stated that the CABPNI for the taxable years 1944 and 1945 were computed for carryback purposes only can be considered as misleading petitioner, for purposes of estoppel. Prior to the time the report was transmitted to petitioner, it had filed timely amended applications for relief under section 722 and claims for refund claiming the right to the benefits of unused excess profits credit carrybacks (based on CABPNI's) from the taxable year 1944 to the taxable year 1942 and from the taxable year 1945 to the taxable year 1943. And in computing the petitioner's excess profits tax liability for the taxable years 1942 and 1943, the Commissioner allowed the petitioner the benefits of those carrybacks. Thus the CABPNI's were computed for carryback purposes and the Commissioner actually used them in his computations as carrybacks, to the extent petitioner had made timely claims therefor. As for the Commissioner's postponing his computation of petitioner's 1943 tax liability from October 1950 to April 1952, it was stipulated that the reason for such postponement was due to the pressure of other work on the agent assigned to the task and because an examination and audit of petitioner's tax returns was being made by another agent for subsequent years. This does not support petitioner's argument that the Commis-

sioner postponed the computation with the idea of preventing the petitioner from amending its claims before the statute of limitations had run. Furthermore, Alcott was aware that specific claims had to be filed in order to secure the benefits of unused excess profits credit carrybacks and in May and June 1949 (prior to the running of the statute of limitations) petitioner in fact filed amended applications for relief under section 722 and claims for refund claiming the benefits of certain unused excess profits credit carrybacks based on CABPNI's, which makes it very doubtful whether petitioner in good faith relied on the Commissioner's alleged representations as it would have us believe.

*Smale & Robinson, Inc.* v. *United States, supra,* is distinguishable on its facts. In that case the taxpayer filed a timely claim for refund of excess profits taxes paid, based on a net operating loss carryback deduction. The revenue agent assigned to the task of examining the merits of the claim proposed an adjustment which reduced the net operating loss carryback, whereupon the agent also proposed the allowance of an unused excess profits credit carryback which had not been claimed by the taxpayer because originally unnecessary. The taxpayer's liability was computed on the basis proposed by the agent and was agreed to by the taxpayer by the execution of a Form 874 waiver agreement. This action all occurred while the taxpayer could have filed a timely claim for such unused excess profits credit carryback. After the applicable period of limitations had expired the taxpayer filed a claim for refund asserting its right to the benefit of the unused excess profits credit carryback. Subsequently the Commissioner disallowed use of the unused credit on the ground that no specific claim for it had been filed. The court held, *inter alia,* that the Commissioner was estopped from asserting that ground as a bar to the taxpayer's recovering the excess profits taxes it had overpaid. The court reasoned that by eliminating from the computation of the taxpayer's excess profits taxes a portion of the net operating loss carryback and inserting in lieu thereof the unused excess profits credit carryback, the Commissioner through the agent proposed and affirmatively represented that the theretofore unused excess profits credit would be allowed without the necessity of the taxpayer's making a formal claim therefor. The court held that the authorized act of using the unused excess profits credit in the computation in the agent's report, the reliance of the taxpayer thereon, and the subsequent lapse of time to the taxpayer's prejudice, bound the Commissioner under circumstances where reliance by the taxpayer was warranted.

In our case, the Commissioner did not at any time allow petitioner the benefit of an unused excess profits credit carryback from the taxable year 1944 to the taxable year 1943. And the allowance (proposed by the revenue agent and rejected by his superiors) of the erroneous

unused excess profits credit *carryover* from the taxable year 1942 to the taxable year 1943 (resulting from the carryback of the unused excess profits credit carryback from the taxable year 1944 to the taxable year 1942), for which a timely claim had been filed, did not occur until after the expiration of the applicable period of limitations. Thus petitioner did not suffer any detriment as a result of the Commissioner's conduct as the taxpayer did in *Smale & Robinson, Inc.* v. *United States, supra.*

Since the petitioner has not filed any timely claims for refund of excess profits taxes paid for the taxable year 1943, based on the carryback of an unused excess profits credit from the taxable year 1944 to the taxable year 1943, nor any informal claims therefor (resulting from a waiver of the regulations by the Commissioner), nor any valid amendments to its timely claims requesting the benefits of such unused credit, and since the Commissioner is not estopped from asserting the failure of petitioner to specify the carryback of an unused excess profits credit from the taxable year 1944 to the taxable year 1943 in a timely claim, we must sustain the Commissioner's determination. See *Lockhart Creamery, supra; Barry-Wehmiller Machinery Co., supra; St. Louis Amusement Co., supra; Utility Appliance Corporation,* 26 T. C. 366 (1956); *May Seed and Nursery Co.* v. *Commissioner, supra;* and *Feature Publications, Inc.,* 29 T. C. 313 (1957).

Reviewed by the Special Division.

*Decision will be entered for the respondent.*