DALE DISTRIBUTING COMPANY, Inc. (Formerly Dale Radio Co., Inc.), Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 252, Docket 25205.

United States Court of Appeals Second Circuit.

Argued May 15, 1959.

Decided Aug. 17, 1959.

Arthur Susswein, New York City, for petitioner.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and Harry Marselli, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before SWAN, HINCKS and MOORE, Circuit Judges.

SWAN, Circuit Judge.

Dale Distributing Company, Inc., hereafter referred to as the taxpayer, seeks review of a decision of the Tax Court with respect to its excess profits tax for the taxable year ended March 31, 1943. There is no dispute as to the facts, most of which were established by stipulation. It was also stipulated that the sole issue for decision is whether the taxpayer is entitled to an unused excess profits credit adjustment for the taxable year 1943 which includes to any extent an unused excess profits carry-back from the taxable year 1944. The Tax Court denied relief on the ground that the taxpayer did not file a timely claim or amendments thereto specifically asserting its right to such carry-back as required by the Commissioner's Regulations. It also held that the Commissioner had not waived his regulatory requirements and is not estopped from asserting the taxpayer's failure to specify the carry-back of the 1944 unused excess profits credit in a timely claim. The findings of fact, conclusions of law and opinion by Judge Tietjens are reported in 29 T.C. 799.

On September 3, 1943, the taxpayer filed a timely application for relief under § 722 of the Internal Revenue Code of 1939, 26 U.S.C.A. Excess Profits Taxes, § 722. This application contained a claim for the benefits of unused excess profits carry-overs to the taxable year 1943, but contained no claim for an unused excess profits carry-back from 1944 to 1943. Treasury Regulations 112, section 35.722-5 requires a taxpayer to claim specifically the benefit of such a carry-back, specifying both the year of the credit and the year to which it is to be applied. The regulation further requires that the claim be filed within the time prescribed by § 322 of the Code, 26 U.S.C.A. § 322, for the filing of a claim or refund for the taxable year to which the carry-back is to be applied. Here the time expired on December 31, 1949 and concededly the taxpayer did not within such time make claim for a carry-back credit from 1944 to 1943.

446

Despite failure to comply with the Treasury Regulations, the taxpayer contends that its original application for relief under § 722 entitled it to raise all pertinent issues bearing upon its tax liability. It relies upon the cases of H. Fendrich, Inc. v. Commissioner, 7 Cir., 242 F.2d 803, and Commissioner v. F. W. Poe Manufacturing Co., 4 Cir., 245 F.2d 8. Our recent decision in Headline Publications, Inc. v. C. I. R., 2 Cir., 263 F.2d 541, renders the contention unavailable in this court. See also May Seed & Nursery Co. v. Commissioner, 8 Cir., 242 F.2d 151, certiorari denied 355 U.S. 839, 78 S.Ct. 62, 2 L.Ed.2d 51.

The Commissioner asserts that the Headline case is also conclusive against the taxpayer's contention that the defect in the form of its timely claim was waived by the Commissioner. Our opinion in Headline made no mention of waiver. We regard as open to appellant the question of waiver.

■ It is clear from decisions of the Supreme Court that formal requirements of Treasury Regulations as to claims for refund of taxes may be waived by the Commissioner through his agents by investigating the merits of the claim. In Tucker v. Alexander, 275 U.S. 228, at page 231, 48 S.Ct. 45, at page 46, 72 L.Ed. 253, Mr. Justice Stone said:

"If the Commissioner is not deceived or misled by the failure to describe accurately the claim, as obviously he was not here, it may be more convenient for the government and decidedly in the interest of an orderly administrative procedure that the claim should be disposed of upon its merits * * * We can perceive no valid reason why the requirements of the regulations may not be waived for that purpose."

In United States v. Memphis Cotton Oil Co., 288 U.S. 62, at page 71, 53 S.Ct. 278,

at page 281, 77 L.Ed. 619, Mr. Justice Cardozo noted that "The function of the regulation is to facilitate research." [1] In Angelus Milling Co. v. Commissioner, 325 U.S. 293, 65 S.Ct. 1162, 89 L.Ed. 1619, Mr. Justice Frankfurter discussed the matter at considerable length. His opinion recognizes that the Commissioner may be shown to have waived the formal requirements of the regulations, if the merits of the claim have been examined and the attention of the Commissioner's agents have been focused on the merits of the dispute, but the evidence must be clear that they understood the specific claim that was made even though there was a departure from form in its submission. At page 297 of 325 U.S., at page 1164 of 65 S.Ct. the opinion states:

"If the Commissioner chooses not to stand on his own formal or detailed requirements, it would be making an empty abstraction, and not a practical safeguard, of a regulation to allow the Commissioner to invoke technical objections after he has investigated the merits of a claim and taken action upon it. Even tax administration does not as a matter of principle preclude considerations of fairness."

See also W. K. Buckley, Inc. v. Commissioner, 2 Cir., 158 F.2d 158, 161; National Forge & Ordnance Company v. United States, 151 F.Supp. 937, 941, 139 Ct.Cl. 204, 222.

■ In the light of the principles announced in these cases, we are unable to agree with the Tax Court's decision that the Commissioner did not waive the formal defects in the taxpayer's claim for refund for the taxable year 1943. Timely applications for relief under § 722 were filed for each of the years 1941 through 1946.[2] The applications for all these years were referred to the § 722 Field Committee. A series of conferenc-

1. The opinion cited with approval Tucker v. Alexander, supra, but concluded, because the claims had been amended, that it was "unnecessary to determine whether the conduct of the Commissioner in investigating the claims upon their merits and reporting to the claimant the result of his inquiry was a waiver in defect of

form which would call for the return of overpayments though no amendment had been offered."

2. For each year prior to 1946 the taxable year ended March 31. For 1946 the taxable year was from April 1, 1945 to and including January 31, 1946.

es with respect to the applications were held during 1947 and 1948 at which the taxpayer was represented by its treasurer, Mr. Alcott. In November, 1948 the Field Committee's representative advised Mr. Alcott that a constructive average base period net income (CABPNI) of $39,061.71 was being tentatively proposed for allowance. He also advised Mr. Alcott that the taxpayer should file amended applications (Form 991) to assert the benefit of unused excess profits carry-backs and/or carry-forwards resulting from such CABPNI. In May, 1949 the taxpayer filed amended applications for the years 1942, 1943 and 1944 claiming the right to the benefits of unused excess profits credits, computed with CABPNI of $39,061.71, as follows: For 1942 a carry-back from 1944; for 1943 a carry-back from 1945; and for 1944 a carry-back from 1946. In a report by Revenue Agent Langs, dated February 21, 1950, a copy of which was transmitted to the taxpayer, it was recommended that there be a partial allowance of the taxpayer's applications for relief and there was proposed a CABPNI of $15,-837.54 for the taxable year 1941 and $46,962.17 for the years 1942 through 1946. The Field Committee's representative pointed out to Mr. Alcott that the carry-backs and carry-overs would have the effect of eliminating most of the tax. The taxpayer having signified its agreement, the Excess Profits Tax Council approved and determined the CABPNI as proposed in the report of February 21, 1950 and the taxpayer was so notified by letter. In October, 1950 a Revenue Agent was assigned to recompute the taxpayer's income tax and excess profits tax liability for the years 1941 through 1945. For reasons involving administrative convenience this agent never completed the recomputation. In the latter part of April, 1952 Agent Healey was assigned the task. In a report dated May 8, 1952, Agent Healey set forth in detail the results of his recomputation. For the year 1943 he reported a carry-over credit from 1942 of $11,187.33, but he was aware that this amount represented a carry-back from 1944 which had not been consumed by the 1942 income, and he so testified. A copy of Healey's report was sent to the taxpayer in a letter dated May 27, 1952 written by the then Internal Revenue Agent in Charge, which explained that after the overassessments had been processed by the Collector, the taxpayer would receive a check in payment of the overassessments and interest, provided there are no outstanding taxes against which the amount should be credited. There were none. But the taxpayer did not receive a check for reasons stated in the Tax Court's opinion as follows:

"It is true that when the revenue agent computed petitioner's excess profits liability for the taxable year 1943, using the CABPNI agreed upon by the parties, he allowed petitioner the benefits of the unused excess profits credit carry-back from 1944 to 1943, however in his computation he identified such credit as a *carry-over credit from the taxable year 1942.* * * * Shortly thereafter the Post Audit Review Section of the Revenue Service, in reviewing the computation, concluded that the agent erroneously allowed the above mentioned carry-over and thereafter a recomputation of petitioner's excess profits tax for the taxable year 1943 was made by the agent in which the $11,-187.33 credit was not allowed. At no time was an unused excess profits credit carry-back from the taxable year 1944 to the taxable year 1943, designated as such, allowed the petitioner by the Commissioner. In view of these circumstances, it is our opinion that allowance of the $11,187.33 credit to petitioner by the agent in his first computation, did not constitute a waiver of the regulations by the Commissioner."

As already stated, we cannot agree with this conclusion. Despite the informality of the claim, the Commissioner by his agents, made a complete investigation of the year 1943 as well as the other years under consideration, and as-

certained that the taxpayer was entitled to a credit of $11,187.33 for the year 1943. Because Agent Healey erroneously designated it as a carry-over from 1942 instead of a carry-back from 1944, which he knew it was, seems to us an inadequate reason for holding that there was no waiver. It is not disputed that the taxpayer had overpaid its excess profits tax liability by that amount, and that the Revenue Agent in Charge had informed the taxpayer that such overpayment would be refunded. In our opinion the undisputed facts are a perfect demonstration of waiver.

The decision is reversed and the cause remanded for recomputation in accordance with this opinion.